# Charles Schwab

## CONFIDENTIALITY, NONSOLICITATION AND ASSIGNMENT AGREEMENT

Charles Schwab & Co., Inc., its parent compan(ies) and/or its/their subsidiaries, affiliates, joint venturers, and successors (collectively, "Schwab" or the "Company") desires to protect its Confidential Information (as more fully described and defined in Paragraph 1, below), to maintain and protect the confidential and/or proprietary nature of such Confidential Information, and to protect against the unauthorized use of such Confidential Information. In consideration for my at-will employment with Schwab and in consideration for the compensation paid and to be paid to me and the receipt of other benefits by Schwab, the receipt and adequacy of which I acknowledge and agree, I am willing to enter into this Confidentiality, Nonsolicitation and Assignment Agreement (this "Agreement") to provide and facilitate the protection of Schwab Confidential Information during and after my employment with the Company in accordance with the terms and conditions set forth below.

1.   (a) I acknowledge and agree that during and related to my employment with Schwab, I will obtain, have access to, and/or be exposed to certain information that is confidential and/or proprietary to, and/or trade secrets of Schwab (collectively, "Confidential Information"). I understand that such Confidential Information may be in any form, and will include all copies, reproductions, summaries, analyses or extracts thereof, based thereon or derived therefrom, and which is the sole and exclusive property of Schwab. Confidential Information may include, but not be limited to:

   (i)   Confidential information about previous, current and/or contemplated products and services, confidential know-how, techniques, computer passwords, computer software designs, and hardware configurations, and confidential training materials, policies and procedures, and research projects;

   (ii)   Market, financial, trade, and sales information and data, pricing, financial models or formulae, business plans, financial and business forecasts and estimates, account valuation, and information about costs and profits;

   (iii)   The identities of Schwab customers or Prospective Customers, as defined in Paragraph 6 (including but not limited to, names, addresses, telephone numbers and/or social security numbers), any account, personal, business, financial and other information pertaining to such customers or Prospective Customers, Schwab customer or Prospective Customer lists in any form, and any information related to the assets and obligations carried in an account by a Schwab customer, a customer's positions, and/or account valuation;

   (iv)   Account, personnel or financial information pertaining to current and former employees of Schwab, business, financial, and other information pertaining to Schwab's vendors and independent contractors, and any lists of such employees, vendors and/or independent contractors;

   (v)   All Developments, as defined in Paragraph 5 below, and all information that relates to said Developments; and/or

   (vi)   All information which Schwab has a legal obligation to treat as confidential, or which Schwab treats as proprietary or designates as confidential or for internal use only, whether or not owned or developed by Schwab.

   (b) "Trade secret," as used in this Agreement, shall mean, without limitation, any technical or non-technical data or other business information, which (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) is the subject of reasonable efforts on the part of Company to maintain its secrecy.

   (c) Notwithstanding the definition in Paragraph 1 hereof, Confidential Information shall not include any information that is in its protected form (i) in the public domain through no fault of an employee of Schwab or otherwise, (ii) readily and accurately discernable from publicly-available products, literature or other information, or (iii) approved for disclosure by prior written permission of an authorized senior or executive officer of Schwab specifically designated by Schwab to give such authorization as required hereunder ("Authorized Officer").


EXHIBIT "A"

2.  I acknowledge that such Confidential Information has been developed by or on behalf of Schwab or licensed by Schwab at great expenditure of both financial and human resources and that such Confidential Information may be unique and not capable of being duplicated, or may only be acquired by significant expense. I acknowledge and agree that Schwab owns or licenses all such Confidential Information and that such information is entrusted to me for the sole and exclusive purpose of enabling me to conduct the business of providing brokerage and financial advice to customers and Prospective Customers (the "Business") on behalf of Schwab. I further understand that Schwab desires (or is under a legal obligation, in the case of information owned by others) to protect such information's confidential and proprietary nature, and takes, and requires me to take, all reasonable measures to maintain the confidentiality and proprietary nature of such information.

3.  I acknowledge that Schwab's Business is intensely competitive and as an employee of Schwab in my position I have or will be exposed to Confidential Information, the direct or indirect disclosure of which to existing and potential competitors of Schwab would place Schwab at a competitive disadvantage and would do damage, monetary or otherwise, to Schwab's Business. I acknowledge that the Confidential Information constitutes a protectable business interest of Schwab.

4.  I agree that I will not, at any time, assert any claim, ownership or other property interest in any Confidential Information. I also will not, for any purpose, directly or indirectly, disclose, reproduce, use, or disseminate in any manner during or after my employment with Schwab, on my own behalf or on behalf of any other person, company or entity, any Confidential Information, unless: (a) such disclosure is required in the ordinary course of my duties at Schwab and is necessary for me to perform my duties; (b) I have received advance written consent from an Authorized Officer; or (c) I am legally compelled (by deposition, interrogatory, request for documents, subpoena, or similar process) to disclose any of the Confidential Information; provided, however, prior to disclosing such Confidential Information, I shall give Schwab prompt prior written notice of such requirement so that Schwab may seek a protective order or other appropriate remedy and/or waive my compliance with the terms of this Agreement. In the event that such protective order or other remedy is not sought or obtained, or that Schwab waives my compliance with the terms hereof, to the extent I shall be legally compelled to disclose the Confidential Information, I agree to provide only that limited portion of the Confidential Information that is legally required and to exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information. I will promptly notify Schwab if I become aware of or suspect any unauthorized (whether intentional or accidental) use or disclosure of Confidential Information by me or by any other person, company or entity.

5.  I will promptly disclose in confidence to Schwab all inventions, improvements, designs, original works of authorship, formulas, processes, computer software programs, databases and trade secrets (collectively, "Developments") that I make, conceive, first reduce to practice, or create, either alone or jointly with others while I am employed by Schwab, and that; (a) result from any work performed by me for Schwab, whether or not in the normal course of my employment or during normal business hours; (b) reasonably relate to the actual or anticipated business, services, products, research or development of Schwab; or (c) are developed with the use of Schwab time, equipment, supplies, Confidential Information or facilities. I must promptly disclose Developments whether or not such Developments are patentable, copyrightable or protectible as trade secrets. I understand and agree that all Developments shall be the sole and exclusive property of Schwab, and I hereby irrevocably assign, transfer and convey to Schwab, exclusively and perpetually, all right, title and interest that I may have or acquire in and to such Developments throughout the world, including without limitation any copyrights and patents, and the right to secure registrations, renewals, reissues, and extensions thereof. I agree to sign any documents and to do all things necessary, without additional compensation, whether during my employment or after, to assist Schwab to register, perfect, maintain and enforce Schwab's rights in any Development, including without limitation any patent, copyright, trade secret or other right or interest. I understand that if I am now a California resident, or if I become a California resident while employed by Schwab, then this paragraph will not apply to any Developments which fully qualify under Section 2870 of the California Labor Code, which section is set forth in the accompanying Exhibit A, attached hereto and made a part hereof.

6.  I acknowledge that during my employment, Schwab will be providing me with resources that enable me to develop, enhance, maintain and/or support account relationships with Schwab's customers and prospective customers, which such prospective customers have been designated as such by virtue of being listed, classified or otherwise identified by me or others, to which I have knowledge of, during my employment with Schwab ("Prospective Customers"). I also acknowledge that such resources are provided at Schwab's expense and the development, enhancement, maintenance and/or support of the account relationships with Schwab's customers and Prospective Customers are solely for Schwab's benefit. I acknowledge and agree that any account relationships I develop, enhance, maintain or support during my employment with Schwab are account relationships that belong solely to Schwab and not to me, with the

116423                                      2.                                    Rev. 1/04

exception of account relationships of my immediate family or other relatives, or individuals or entities that I provided financial services to prior to joining Schwab, and which I have identified in the accompanying Exhibit B, attached hereto and made a part hereof.  I agree that I will undertake to update this Exhibit B, as and when necessary, by written notice to Schwab.

7.   I agree that during my employment with Schwab, I will not, directly or indirectly, on my behalf or on behalf of any other person, company or entity, solicit or induce, or attempt to solicit or induce (which shall include, but is not limited to, contact or communication in any manner for the purpose of soliciting or inducing): (a) any customer or Prospective Customer of Schwab to divert, transfer or otherwise take away any business from Schwab; or (b) any employee, vendor or independent contractor of, or consultant to, Schwab to leave his or her employment or assignment with Schwab.

8.   I agree that during my employment with Schwab, I will not remove any property of Schwab in original or copied form, including, but not limited to, any Confidential Information existing in any form from Schwab's premises, except as required in the ordinary course of my duties at Schwab and as necessary for me to perform my duties.  I agree that I will promptly return to Schwab immediately upon Schwab's request, my acceptance of other employment, or the termination of my employment for any reason, any and all documents and materials that contain, refer to, or relate in any way to any Confidential Information, as well as any other property of Schwab in my possession or control, including, but not limited to, any information pertaining and/or relating to Schwab's customers and Prospective Customers, and all originals, copies and derivations of Schwab's documents, electronic and telephonic equipment, credit cards, security badges, and passwords.  I further agree that I will permit Schwab to inspect any materials provided by Schwab to me or developed by me as a result of or in connection with my employment with Schwab when I accept other employment or otherwise separate from my employment, regardless of where said materials are located.

9.   I further agree that for a period of eighteen (18) months after my employment with Schwab ceases beginning on the date of my termination (the "Proscribed Period"), I will not, directly or indirectly, or on behalf of any third party: (a) solicit or attempt to solicit any existing customers I serviced, directly or indirectly, and/or any Prospective Customers (with the exception of individuals or entities listed in the attached Exhibit B), or customers whose identities I learned as a result of my employment with Schwab, in an attempt to divert, transfer or otherwise take away business or prospective business from Schwab; (b) sell or offer to sell any security, retirement, insurance or annuity product or related service to any customer or Prospective Customer of Schwab that I solicited or attempted to solicit in breach of my obligations hereunder; or (c) solicit or attempt to solicit or induce (which shall include, but is not limited to, contact or communication in any manner for the purpose of soliciting or inducing) any employee, vendor or independent contractor of, or consultant to, Schwab to leave his or her employment or assignment with Schwab.  I further agree that the purpose of this provision is to prevent the intentional or inadvertent unlawful use of Schwab's Confidential Information, including its trade secrets.  Nothing in this Paragraph 9 is intended to prevent me from discussing possible employment or prospective business with any customer, Prospective Customer, employee, consultant or independent contractor who contacts me directly on his or her own volition without my solicitation or attempted solicitation of him or her.  I understand that nothing in this Paragraph 9 limits my absolute obligation under Paragraph 4 to never use Confidential Information for any other purpose at any time after my employment with Schwab ceases.  Sections (a) and (b) of this Paragraph 9 shall not apply to any institutional customer or institutional Prospective Customer of Schwab Capital Markets L.P. whose identity is publicly available (notwithstanding the provisions in paragraph 6).

10.  I represent and warrant that I do not have any agreement(s) with any former employer or other third party that would be breached by my performance of my duties at Schwab or that would limit, impair or otherwise adversely affect my performance of such duties, and that I will not take any action to breach any such agreement while I am employed by Schwab.  In any event, I will not use or disclose to Schwab any confidential information that belongs to others.  I have listed on Exhibit C to this Agreement all the confidential, proprietary, trade secret, non-solicitation and/or non-competition agreements to which I am subject and affirm that those agreements, if any, would not be breached by performance of my duties at Schwab.  I also agree that I will disclose my obligations under this Agreement to any prospective or future employer or contractor and that my obligations under this Agreement in their entirety shall survive the termination of my employment with Schwab regardless of the reason for the termination.

11.  I understand and agree that any breach of this Agreement may subject me to disciplinary action, up to and including termination of my employment (if I am still employed at Schwab).  I also understand and agree that any breach of this Agreement by me will cause immediate irreparable injury to Schwab that cannot be adequately compensated by money damages or whose damages may be difficult to ascertain.  If a court of competent jurisdiction or an arbitration panel finds that injunctive relief is appropriate to enforce any provision of this Agreement, I agree that Schwab is entitled to such injunctive relief, in order to, among other things, prevent a continuing breach or to protect and preserve the status

quo pending full resolution of any dispute relating to this Agreement and under such circumstances, I specifically CONSENT TO THE ISSUANCE OF INJUNCTIVE RELIEF ordering, among other things:

    (a)    that I return to Schwab all records of any kind or nature (including but not limited to original and duplicate, typed and handwritten, soft (electronic, diskette) and hard copy and any other form) containing, referring to, or otherwise based on Confidential Information, and that I be prohibited from using or disclosing such records or the information in such records; and

    (b)    that, for the Proscribed Period, I shall be prohibited from soliciting or attempting to solicit (i) any Schwab customer whom I serviced (directly or indirectly) or any Schwab customer or Prospective Customer whose identity I learned as a result of my employment with Schwab to divert, transfer or otherwise take away business or prospective business from Schwab; and/or (ii) any employee, vendor or independent contractor of, or consultant to, Schwab to leave their employment or assignment with Schwab.

12. I understand and agree that in the event of a breach of this Agreement by Schwab or me, either party may seek interim injunctive relief against the other in an appropriate forum. The parties agree to expedited discovery, including depositions, in connection with any proceeding alleging breach of this Agreement, whether or not the laws of the jurisdiction or the applicable rules of arbitration procedure imposed by a regulatory body or by agreement provide for such expedited discovery. To the extent applicable, this provision is intended to supplement and not to supersede the rights and obligations of the parties to this Agreement under the terms of the Form U-4 signed or to be signed by me to become a registered individual with the Company or the terms of a separate arbitration agreement. The parties further agree that a party's application to a court or an arbitration forum for injunctive relief shall not be construed as a waiver by the other party of the right to arbitrate or demand arbitration of claims, where applicable.

13. I understand and agree that should I violate Paragraph 7(a) or Paragraph 9 of this Agreement, Schwab will suffer irreparable harm and damages that may be difficult to ascertain at the time of the violation, including, but would not be limited to, costs associated with investigating, monitoring, restricting and/or terminating the use of Confidential Information by me in violation of this Agreement, revenue lost from assets diverted or transferred in violation of this Agreement, and costs associated with maintaining, restoring or repairing Schwab's relationship with customers or Prospective Customers that were solicited in violation of this Agreement. I therefore understand and agree that I will be liable to pay Schwab liquidated damages of four percent (4%) of any existing customer or Prospective Customer assets found by a court of competent jurisdiction or an arbitration panel to have been diverted, transferred or otherwise taken away from Schwab in violation of Paragraph 7(a) or Paragraph 9 above. I agree that this formula represents a reasonable estimate of Schwab's actual damages and does not constitute a penalty. I understand and agree that liquidated damages are in addition to any other relief that Schwab may be entitled to, including, but not limited to, injunctive relief and/or punitive damages.

14. This Agreement and the rights and obligations of the parties hereto shall bind and inure to the benefit of any successor or successors of Schwab, but neither this Agreement nor any rights or benefits hereunder may be assigned by me.

15. In the event that a party to this Agreement brings an action to enforce any provision of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs incurred to enforce such claim.

16. If any provision or portion of any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof will be enforced to the maximum extent permissible, and the remaining provisions or portions thereof shall remain in full force and effect. I agree that the terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by Schwab, without giving effect to such state's conflict of law principles.

[NO FURTHER TEXT ON THIS PAGE]

17. This Agreement shall be effective as of the date written below.  I understand and agree that part of the consideration for this Agreement is the continuation of my employment relationship with Schwab, but that nothing in this Agreement changes my "at will" employment status, and that either Schwab or I may end the employment relationship at any time, with or without notice, for any reason or no reason at all.

Signed:

Printed Name: _LANCE  MCMORREY_      Date: _6/14/04_

Employee ID Number: _7096_   *or last 4 digits of Social Security Number:* _____

116423                                        5.                                    Rev. 1/04

## EXHIBIT A

### California Labor Code Section 2870

(a)   Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)  Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)  Result from any work performed by the employee for the employer.

(b)   To the extent that a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

116423                                          6.                                     Rev. 1/04

## EXHIBIT B

List of family members and other relatives (identified by familial status) and individuals or entities that I provided financial services to prior to joining Schwab (attach additional pages if necessary)

Initials

## EXHIBIT C

### List of Prior Agreements

Initials

116423                          8.                        Rev. 1/04

CONFIDENTIALITY, NONSOLICITATION AND ASSIGNMENT AGREEMENT
**CONFIRMATION PAGE**

Confirmation of Agreement to and Signature on Confidentiality, Nonsolicitation and Assignment Agreement.

This is your Confirmation of your electronic agreement to the Confidentiality, Nonsolicitation and Assignment Agreement. You may print this copy and record of our agreement and retain it for your records.

To PRINT this page, simply click the PRINT BUTTON on your browser.

**Employee:** Lance Mcmurry
**Employee ID:** 07096
**Employee Logon:** us\lance.mcmurry
**Employee Email:** Lance.Mcmurry@schwab.com
**Employee Telephone:** +1(239)436-1552
**Employee Manager:** Brian Baker

**Date of Electronic Signature:** 03/29/2006 06:59:17 AM EST
**Document:** Confidentiality_Agreement_rev132873_1.pdf

Charles Schwab & Co., Inc., its parent compan(ies) and/or its/their subsidiaries, affiliates, joint venturers, and successors (collectively, "Schwab" or the "Company") desires to protect its Confidential Information (as more fully described and defined in Paragraph 1, below), to maintain and protect the confidential and/or proprietary nature of such Confidential Information, and to protect against the unauthorized use of such Confidential Information. In consideration for my at-will employment with Schwab and in consideration for the compensation paid and to be paid to me and the receipt of other benefits by Schwab, the receipt and adequacy of which I acknowledge and agree, I am willing to enter into this Confidentiality, Nonsolicitation and Assignment Agreement (this "Agreement") to provide and facilitate the protection of Schwab Confidential Information during and after my employment with the Company in accordance with the terms and conditions set forth below.

1.

    a.  I acknowledge and agree that during and related to my employment with Schwab, I will obtain, have access to, and/or be exposed to certain information that is confidential and/or proprietary to, and/or trade secrets of Schwab (collectively, "Confidential Information"). I understand that such Confidential Information may be in any form, and will include all copies, reproductions, summaries, analyses or extracts thereof, based thereon or derived therefrom, and which is the sole and exclusive property of Schwab. Confidential Information may include, but not be limited to:

            i.  Confidential information about previous, current and/or contemplated products and services, confidential know-how, techniques, computer passwords, computer software designs, and hardware configurations, and confidential training materials, policies and procedures, and research projects;



**EXHIBIT**

"B"

    ii.    Market, financial, trade, and sales information and data, pricing, financial models or formulae, business plans, financial and business forecasts and estimates, account valuation, and information about costs and profits;

    iii.    The identities of Schwab customers or Prospective Customers, as defined in Paragraph 6 (including but not limited to, names, addresses, telephone numbers and/or social security numbers), any account, personal, business, financial and other information pertaining to such customers or Prospective Customers, Schwab customer or Prospective Customer lists in any form, and any information related to the assets and obligations carried in an account by a Schwab customer, a customer's positions, and/or account valuation;

    iv.    Account, personnel or financial information pertaining to current and former employees of Schwab, business, financial, and other information pertaining to Schwab's vendors and independent contractors, and any lists of such employees, vendors and/or independent contractors;

    v.    All Developments, as defined in Paragraph 5 below, and all information that relates to said Developments; and/or

    vi.    All information which Schwab has a legal obligation to treat as confidential, or which Schwab treats as proprietary or designates as confidential or for internal use only, whether or not owned or developed by Schwab.

    b.    "Trade Secret," as used in this Agreement, shall mean, without limitation, any technical or non-technical data or other business information, which (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) is the subject of reasonable efforts on the part of Company to maintain its secrecy.

    c.    Notwithstanding the definition in Paragraph 1 hereof, Confidential Information shall not include any information that is in its protected form (i) in the public domain through no fault of an employee of Schwab or otherwise, (ii) readily and accurately discernable from publicly-available products, literature or other information, or (iii) approved for disclosure by prior written permission of an authorized senior or executive officer of Schwab specifically designated by Schwab to give such authorization as required hereunder ("Authorized Officer").

2.    I acknowledge that such Confidential Information has been developed by or on behalf of Schwab or licensed by Schwab at great expenditure of both financial and human resources and that such Confidential Information may be unique and not capable of being duplicated, or may only be acquired by significant expense. I

acknowledge and agree that Schwab owns or licenses all such Confidential Information and that such information is entrusted to me for the sole and exclusive purpose of enabling me to conduct the business of providing brokerage and financial advice to customers and Prospective Customers (the "Business") on behalf of Schwab. I further understand that Schwab desires (or is under a legal obligation, in the case of information owned by others) to protect such information's confidential and proprietary nature, and takes, and requires me to take, all reasonable measures to maintain the confidentiality and proprietary nature of such information.

3. I acknowledge that Schwab's Business is intensely competitive and as an employee of Schwab in my position I have or will be exposed to Confidential Information, the direct or indirect disclosure of which to existing and potential competitors of Schwab would place Schwab at a competitive disadvantage and would do damage, monetary or otherwise, to Schwab's Business. I acknowledge that the Confidential Information constitutes a protectable business interest of Schwab.

4. I agree that I will not, at any time, assert any claim, ownership or other property interest in any Confidential Information. I also will not, for any purpose, directly or indirectly, disclose, reproduce, use, or disseminate in any manner during or after my employment with Schwab, on my own behalf or on behalf of any other person, company or entity, any Confidential Information, unless: (a) such disclosure is required in the ordinary course of my duties at Schwab and is necessary for me to perform my duties; (b) I have received advance written consent from an Authorized Officer; or (c) I am legally compelled (by deposition, interrogatory, request for documents, subpoena, or similar process) to disclose any of the Confidential Information; provided, however, prior to disclosing such Confidential Information, I shall give Schwab prompt prior written notice of such requirement so that Schwab may seek a protective order or other appropriate remedy and/or waive my compliance with the terms of this Agreement. In the event that such protective order or other remedy is not sought or obtained, or that Schwab waives my compliance with the terms hereof, to the extent I shall be legally compelled to disclose the Confidential Information, I agree to provide only that limited portion of the Confidential Information that is legally required and to exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information. I will promptly notify Schwab if I become aware of or suspect any unauthorized (whether intentional or accidental) use or disclosure of Confidential Information by me or by any other person, company or entity.

5. I will promptly disclose in confidence to Schwab all inventions, improvements, designs, original works of authorship, formulas, processes, computer software programs, databases and trade secrets (collectively, "Developments") that I make, conceive, first reduce to practice, or create, either alone or jointly with others while I am employed by Schwab, and that: (a) result from any work performed by me for Schwab, whether or not in the normal course of my employment or during

normal business hours; (b) reasonably relate to the actual or anticipated business, services, products, research or development of Schwab; or (c) are developed with the use of Schwab time, equipment, supplies, Confidential Information or facilities. I must promptly disclose Developments whether or not such Developments are patentable, copyrightable or protectible as trade secrets. I understand and agree that all Developments shall be the sole and exclusive property of Schwab, and I hereby irrevocably assign, transfer and convey to Schwab, exclusively and perpetually, all right, title and interest that I may have or acquire in and to such Developments throughout the world, including without limitation any copyrights and patents, and the right to secure registrations, renewals, reissues, and extensions thereof. I agree to sign any documents and to do all things necessary, without additional compensation, whether during my employment or after, to assist Schwab to register, perfect, maintain and enforce Schwab's rights in any Development, including without limitation any patent, copyright, trade secret or other right or interest. I understand that if I am now a California resident, or if I become a California resident while employed by Schwab, then this paragraph will not apply to any Developments which fully qualify under Section 2870 of the California Labor Code, which section is set forth in the accompanying <u>Exhibit A,</u> attached hereto and made a part hereof.

6. I acknowledge that during my employment, Schwab will be providing me with resources that enable me to develop, enhance, maintain and/or support account relationships with Schwab's customers and prospective customers, which such prospective customers have been designated as such by virtue of being listed, classified or otherwise identified by me or others, to which I have knowledge of, during my employment with Schwab ("Prospective Customers"). I also acknowledge that such resources are provided at Schwab's expense and the development, enhancement, maintenance and/or support of the account relationships with Schwab's customers and Prospective Customers are solely for Schwab's benefit. I acknowledge and agree that any account relationships I develop, enhance, maintain or support during my employment with Schwab are account relationships that belong solely to Schwab and not to me, with the exception of account relationships of my immediate family or other relatives, or individuals or entities that I provided financial services to prior to joining Schwab, and which I have identified in the accompanying <u>Exhibit B,</u> attached hereto and made a part hereof. I agree that I will undertake to update this <u>Exhibit B</u>, as and when necessary, by written notice to Schwab.

7. I acknowledge that during my employment, Schwab will be providing me with resources that enable me to develop, enhance, maintain and/or support account relationships with Schwab's customers and prospective customers, which such prospective customers have been designated as such by virtue of being listed, classified or otherwise identified by me or others, to which I have knowledge of, during my employment with Schwab ("Prospective Customers"). I also acknowledge that such resources are provided at Schwab's expense and the development, enhancement, maintenance and/or support of the account relationships with Schwab's customers and Prospective Customers are solely for

Schwab's benefit. I acknowledge and agree that any account relationships I develop, enhance, maintain or support during my employment with Schwab are account relationships that belong solely to Schwab and not to me, with the exception of account relationships of my immediate family or other relatives, or individuals or entities that I provided financial services to prior to joining Schwab, and which I have identified in the accompanying Exhibit B, attached hereto and made a part hereof. I agree that I will undertake to update this Exhibit B, as and when necessary, by written notice to Schwab.

8.  I agree that during my employment with Schwab, I will not, directly or indirectly, on my behalf or on behalf of any other person, company or entity, solicit or induce, or attempt to solicit or induce (which shall include, but is not limited to, contact or communication in any manner for the purpose of soliciting or inducing): (a) any customer or Prospective Customer of Schwab to divert, transfer or otherwise take away any business from Schwab; or (b) any employee, vendor or independent contractor of, or consultant to, Schwab to leave his or her employment or assignment with Schwab.

9.  I agree that during my employment with Schwab, I will not remove any property of Schwab in original or copied form, including, but not limited to, any Confidential Information existing in any form from Schwab's premises, except as required in the ordinary course of my duties at Schwab and as necessary for me to perform my duties. I agree that I will promptly return to Schwab immediately upon Schwab's request, my acceptance of other employment, or the termination of my employment for any reason, any and all documents and materials that contain, refer to, or relate in any way to any Confidential Information, as well as any other property of Schwab in my possession or control, including, but not limited to, any information pertaining and/or relating to Schwab's customers and Prospective Customers, and all originals, copies and derivations of Schwab's documents, electronic and telephonic equipment, credit cards, security badges, and passwords. I agree that any Confidential Information stored, recorded or contained on my personal cell phone or any other personal electronic device will be immediately removed or deleted by me upon termination of my employment for any reason. I further agree that I will permit Schwab to inspect any materials provided by Schwab to me or developed by me as a result of or in connection with my employment with Schwab when I accept other employment or otherwise separate from my employment, regardless of where said materials are located.

10. I further agree that for a period of eighteen (18) months after my employment with Schwab ceases beginning on the date of my termination (the "Proscribed Period"), I will not, directly or indirectly, or on behalf of any third party: (a) solicit or attempt to solicit any existing customers I serviced, directly or indirectly, and/or any Prospective Customers (with the exception of individuals or entities listed in the attached Exhibit B), or customers whose identities I learned as a result of my employment with Schwab, in an attempt to divert, transfer or otherwise take away business or prospective business from Schwab; (b) sell or offer to sell any security, retirement, insurance or annuity product or related

service to any customer or Prospective Customer of Schwab that I solicited or attempted to solicit in breach of my obligations hereunder; or (c) solicit or attempt to solicit or induce (which shall include, but is not limited to, contact or communication in any manner for the purpose of soliciting or inducing) any employee, vendor or independent contractor of, or consultant to, Schwab to leave his or her employment or assignment with Schwab. I further agree that the purpose of this provision is to prevent the intentional or inadvertent unlawful use of Schwab's Confidential Information, including its trade secrets. If Schwab assigns me to service specific retail client account relationships (the "Specified Accounts"), I will not, for a period of one year following the termination of my employment with Schwab, initiate any contact for any purpose with any of the Specified Accounts (including notifying them of my new or subsequent place(s) of employment). This restriction will not apply to Schwab clients that I have identified in Exhibit B. I agree that I am being assigned to service the Specified Accounts on a non-exclusive basis, and that Schwab may reassign me to service other client accounts and/or assign other Schwab employees to service the Specified Accounts at any time and at Schwab's sole discretion. Nothing in this Paragraph 9 is intended to prevent me from discussing possible employment or prospective business with any customer, Prospective Customer, employee, consultant or independent contractor who contacts me directly on his or her own volition without my contact, solicitation or attempted solicitation of him or her. I understand that nothing in this Paragraph 9 limits my absolute obligation under Paragraph 4 to never use Confidential Information for any other purpose at any time after my employment with Schwab ceases.

11. I represent and warrant that I do not have any agreement(s) with any former employer or other third party that would be breached by my performance of my duties at Schwab or that would limit, impair or otherwise adversely affect my performance of such duties, and that I will not take any action to breach any such agreement while I am employed by Schwab. In any event, I will not use or disclose to Schwab any confidential information that belongs to others. I have listed on Exhibit C to this Agreement all the confidential, proprietary, trade secret, non-solicitation and/or non-competition agreements to which I am subject and affirm that those agreements, if any, would not be breached by performance of my duties at Schwab. I also agree that I will disclose my obligations under this Agreement to any prospective or future employer or contractor and that my obligations under this Agreement in their entirety shall survive the termination of my employment with Schwab regardless of the reason for the termination.

12. I understand and agree that any breach of this Agreement may subject me to disciplinary action, up to and including termination of my employment (if I am still employed at Schwab). I also understand and agree that any breach of this Agreement by me will cause immediate irreparable injury to Schwab that cannot be adequately compensated by money damages or whose damages may be difficult to ascertain. If a court of competent jurisdiction or an arbitration panel finds that injunctive relief is appropriate to enforce any provision of this Agreement, I agree that Schwab is entitled to such injunctive relief, in order to,

among other things, prevent a continuing breach or to protect and preserve the status quo pending full resolution of any dispute relating to this Agreement and under such circumstances, I specifically CONSENT TO THE ISSUANCE OF INJUNCTIVE RELIEF ordering, among other things:

    a. that I return to Schwab all records of any kind or nature (including but not limited to original and duplicate, typed and handwritten, soft (electronic, diskette) and hard copy and any other form) containing, referring to, or otherwise based on Confidential Information, and that I be prohibited from using or disclosing such records or the information in such records; and

    b. that, for the Proscribed Period, I shall be prohibited from soliciting or attempting to solicit (i) any Schwab customer whom I serviced (directly or indirectly) or any Schwab customer or Prospective Customer whose identity I learned as a result of my employment with Schwab to divert, transfer or otherwise take away business or prospective business from Schwab; and/or (ii) any employee, vendor or independent contractor of, or consultant to, Schwab to leave their employment or assignment with Schwab.

13. I understand and agree that in the event of a breach of this Agreement by Schwab or me, either party may seek interim injunctive relief against the other in an appropriate forum. The parties agree to expedited discovery, including depositions, in connection with any proceeding alleging breach of this Agreement, whether or not the laws of the jurisdiction or the applicable rules of arbitration procedure imposed by a regulatory body or by agreement provide for such expedited discovery. To the extent applicable, this provision is intended to supplement and not to supersede the rights and obligations of the parties to this Agreement under the terms of the Form U-4 signed or to be signed by me to become a registered individual with the Company or the terms of a separate arbitration agreement. The parties further agree that a party's application to a court or an arbitration forum for injunctive relief shall not be construed as a waiver by the other party of the right to arbitrate or demand arbitration of claims, where applicable.

14. I understand and agree that should I violate Paragraph 7(a) or Paragraph 9 of this Agreement, Schwab will suffer irreparable harm and damages that may be difficult to ascertain at the time of the violation, including, but would not be limited to, costs associated with investigating, monitoring, restricting and/or terminating the use of Confidential Information by me in violation of this Agreement, revenue lost from assets diverted or transferred in violation of this Agreement, and costs associated with maintaining, restoring or repairing Schwab's relationship with customers or Prospective Customers that were solicited in violation of this Agreement. I therefore understand and agree that I will be liable to pay Schwab liquidated damages of four percent (4%) of any existing customer or Prospective Customer assets found by a court of competent jurisdiction or an arbitration panel to have been diverted, transferred or otherwise

taken away from Schwab in violation of Paragraph 7(a) or Paragraph 9 above. I agree that this formula represents a reasonable estimate of Schwab's actual damages and does not constitute a penalty. I understand and agree that liquidated damages are in addition to any other relief that Schwab may be entitled to, including, but not limited to, injunctive relief and/or punitive damages.

15. This Agreement and the rights and obligations of the parties hereto shall bind and inure to the benefit of any successor or successors of Schwab, but neither this Agreement nor any rights or benefits hereunder may be assigned by me.

16. In the event that a party to this Agreement brings an action to enforce any provision of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs incurred to enforce such claim.

17. If any provision or portion of any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof will be enforced to the maximum extent permissible, and the remaining provisions or portions thereof shall remain in full force and effect. I agree that the terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by Schwab, without giving effect to such state's conflict of law principles.

18. This Agreement shall be effective as of the date written below. **I understand and agree that part of the consideration for this Agreement is the continuation of my employment relationship with Schwab, but that nothing in this Agreement changes my "at will" employment status, and that either Schwab or I may end the employment relationship at any time, with or without notice, for any reason or no reason at all.**

---

**EXHIBIT A**
California Labor Code Section 2870

a.  Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
 1.  Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
 2.  Result from any work performed by the employee for the employer.
b.  To the extent that a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**X** click here to electronically inital form

---

**EXHIBIT B**
List of family members and other relatives (identified by familial status) and individuals or entities that I provided financial services to prior to joining Schwab.

**X** click here to electronically inital form

**EXHIBIT B**
List of Prior Agreements. If you have a copy of a prior agreement, please provide it to your manager.

**X** click here to electronically inital form

**Signature**
I represent that I am the individual indicated in the "Work Contact Information" section in the upper left hand corner of this screen, that I accessed this screen by logging in to the Schwab network and using my unique password or biometric device, and that I have not shared my password with anyone.

By clicking "I Agree" below I am creating a binding contract with Schwab, just as enforceable as if it were a handwritten signature.

I Agree

## CONFIDENTIALITY, NONSOLICITATION AND ASSIGNMENT AGREEMENT
### CONFIRMATION PAGE

Confirmation of Agreement to and Signature on Confidentiality, Nonsolicitation and Assignment Agreement.

This is your Confirmation of your electronic agreement to the Confidentiality, Nonsolicitation and Assignment Agreement. You may print this copy and record of our agreement and retain it for your records.

To PRINT this page, simply click the PRINT BUTTON on your browser.

**Employee:** Lance Mcmurry
**Employee ID:** 07096
**Employee Logon:** us\lance.mcmurry
**Employee Email:** Lance.Mcmurry@schwab.com
**Employee Telephone:** +1(239)436-1552
**Employee Manager:** Joseph Lacagnina

**Date of Electronic Signature:** 04/16/2007 11:43:03 AM EST

Charles Schwab & Co., Inc., its parent compan(ies) and/or its/their subsidiaries, affiliates, joint venturers, and successors (collectively, "Schwab" or the "Company") desires to protect its Confidential Information (as more fully described and defined in Paragraph 1, below), to maintain and protect the confidential and/or proprietary nature of such Confidential Information, and to protect against the unauthorized use of such Confidential Information. In consideration for my at-will employment with Schwab and in consideration for the compensation paid and to be paid to me and the receipt of other benefits by Schwab, the receipt and adequacy of which I acknowledge and agree, I am willing to enter into this Confidentiality, Nonsolicitation and Assignment Agreement (this "Agreement") to provide and facilitate the protection of Schwab Confidential Information during and after my employment with the Company in accordance with the terms and conditions set forth below.

1.

    a.  I acknowledge and agree that during and related to my employment with Schwab, I will obtain, have access to, and/or be exposed to certain information that is confidential and/or proprietary to, and/or trade secrets of Schwab (collectively, "Confidential Information"). I understand that such Confidential Information may be in any form, and will include all copies, reproductions, summaries, analyses or extracts thereof, based thereon or derived therefrom, and which is the sole and exclusive property of Schwab. Confidential Information may include, but not be limited to:

        i.  Confidential information about previous, current and/or contemplated products and services, confidential know-how, techniques, computer passwords, computer software designs, and hardware configurations, and confidential training materials, policies and procedures, and research projects;

       ii.  Market, financial, trade, and sales information and data, pricing, financial models or formulae, business plans, financial and



business forecasts and estimates, account valuation, and information about costs and profits;

    iii.   The identities of Schwab customers or Prospective Customers, as defined in Paragraph 6 (including but not limited to, names, addresses, telephone numbers and/or social security numbers), any account, personal, business, financial and other information pertaining to such customers or Prospective Customers, Schwab customer or Prospective Customer lists in any form, and any information related to the assets and obligations carried in an account by a Schwab customer, a customer's positions, and/or account valuation;

    iv.   Account , personnel or financial information pertaining to current and former employees of Schwab, business, financial, and other information pertaining to Schwab's vendors and independent contractors, and any lists of such employees, vendors and/or independent contractors;

    v.   All Developments, as defined in Paragraph 5 below, and all information that relates to said Developments; and/or

    vi.   All information which Schwab has a legal obligation to treat as confidential, or which Schwab treats as proprietary or designates as confidential or for internal use only, whether or not owned or developed by Schwab.

  b.  "Trade Secret," as used in this Agreement, shall mean, without limitation, any technical or non-technical data or other business information, which (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) is the subject of reasonable efforts on the part of Company to maintain its secrecy.

  c.  Notwithstanding the definition in Paragraph 1 hereof, Confidential Information shall not include any information that is in its protected form (i) in the public domain through no fault of an employee of Schwab or otherwise, (ii) readily and accurately discernable from publicly-available products, literature or other information, or (iii) approved for disclosure by prior written permission of an authorized senior or executive officer of Schwab specifically designated by Schwab to give such authorization as required hereunder ("Authorized Officer").

2.  I acknowledge that such Confidential Information has been developed by or on behalf of Schwab or licensed by Schwab at great expenditure of both financial and human resources and that such Confidential Information may be unique and not capable of being duplicated, or may only be acquired by significant expense. I acknowledge and agree that Schwab owns or licenses all such Confidential Information and that such information is entrusted to me for the sole and

exclusive purpose of enabling me to conduct the business of providing brokerage and financial advice to customers and Prospective Customers (the "Business") on behalf of Schwab. I further understand that Schwab desires (or is under a legal obligation, in the case of information owned by others) to protect such information's confidential and proprietary nature, and takes, and requires me to take, all reasonable measures to maintain the confidentiality and proprietary nature of such information.

3. I acknowledge that Schwab's Business is intensely competitive and as an employee of Schwab in my position I have or will be exposed to Confidential Information, the direct or indirect disclosure of which to existing and potential competitors of Schwab would place Schwab at a competitive disadvantage and would do damage, monetary or otherwise, to Schwab's Business. I acknowledge that the Confidential Information constitutes a protectable business interest of Schwab.

4. I agree that I will not, at any time, assert any claim, ownership or other property interest in any Confidential Information. I also will not, for any purpose, directly or indirectly, disclose, reproduce, use, or disseminate in any manner during or after my employment with Schwab, on my own behalf or on behalf of any other person, company or entity, any Confidential Information, unless: (a) such disclosure is required in the ordinary course of my duties at Schwab and is necessary for me to perform my duties; (b) I have received advance written consent from an Authorized Officer; or (c) I am legally compelled (by deposition, interrogatory, request for documents, subpoena, or similar process) to disclose any of the Confidential Information; provided, however, prior to disclosing such Confidential Information, I shall give Schwab prompt prior written notice of such requirement so that Schwab may seek a protective order or other appropriate remedy and/or waive my compliance with the terms of this Agreement. In the event that such protective order or other remedy is not sought or obtained, or that Schwab waives my compliance with the terms hereof, to the extent I shall be legally compelled to disclose the Confidential Information, I agree to provide only that limited portion of the Confidential Information that is legally required and to exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information. I will promptly notify Schwab if I become aware of or suspect any unauthorized (whether intentional or accidental) use or disclosure of Confidential Information by me or by any other person, company or entity.

5. I will promptly disclose in confidence to Schwab all inventions, improvements, designs, original works of authorship, formulas, processes, computer software programs, databases and trade secrets (collectively, "Developments") that I make, conceive, first reduce to practice, or create, either alone or jointly with others while I am employed by Schwab, and that: (a) result from any work performed by me for Schwab, whether or not in the normal course of my employment or during normal business hours; (b) reasonably relate to the actual or anticipated business, services, products, research or development of Schwab; or (c) are developed with

the use of Schwab time, equipment, supplies, Confidential Information or facilities. I must promptly disclose Developments whether or not such Developments are patentable, copyrightable or protectible as trade secrets. I understand and agree that all Developments shall be the sole and exclusive property of Schwab, and I hereby irrevocably assign, transfer and convey to Schwab, exclusively and perpetually, all right, title and interest that I may have or acquire in and to such Developments throughout the world, including without limitation any copyrights and patents, and the right to secure registrations, renewals, reissues, and extensions thereof. I agree to sign any documents and to do all things necessary, without additional compensation, whether during my employment or after, to assist Schwab to register, perfect, maintain and enforce Schwab's rights in any Development, including without limitation any patent, copyright, trade secret or other right or interest. I understand that if I am now a California resident, or if I become a California resident while employed by Schwab, then this paragraph will not apply to any Developments which fully qualify under Section 2870 of the California Labor Code, which section is set forth in the accompanying Exhibit A, attached hereto and made a part hereof.

6.  I acknowledge that during my employment, Schwab will be providing me with resources that enable me to develop, enhance, maintain and/or support account relationships with Schwab's customers and prospective customers, which such prospective customers have been designated as such by virtue of being listed, classified or otherwise identified by me or others, to which I have knowledge of, during my employment with Schwab ("Prospective Customers"). I also acknowledge that such resources are provided at Schwab's expense and the development, enhancement, maintenance and/or support of the account relationships with Schwab's customers and Prospective Customers are solely for Schwab's benefit. I acknowledge and agree that any account relationships I develop, enhance, maintain or support during my employment with Schwab are account relationships that belong solely to Schwab and not to me, with the exception of account relationships of my immediate family or other relatives, or individuals or entities that I provided financial services to prior to joining Schwab, and which I have identified in the accompanying Exhibit B, attached hereto and made a part hereof. I agree that I will undertake to update this Exhibit B, as and when necessary, by written notice to Schwab.

7.  I agree that during my employment with Schwab, I will not, directly or indirectly, on my behalf or on behalf of any other person, company or entity, solicit or induce, or attempt to solicit or induce (which shall include, but is not limited to, contact or communication in any manner for the purpose of soliciting or inducing): (a) any customer or Prospective Customer of Schwab to divert, transfer or otherwise take away any business from Schwab; or (b) any employee, vendor or independent contractor of, or consultant to, Schwab to leave his or her employment or assignment with Schwab.

8.  I agree that during my employment with Schwab, I will not remove any property of Schwab in original or copied form, including, but not limited to, any

Confidential Information existing in any form from Schwab's premises, except as required in the ordinary course of my duties at Schwab and as necessary for me to perform my duties. I agree that I will promptly return to Schwab immediately upon Schwab's request, my acceptance of other employment, or the termination of my employment for any reason, any and all documents and materials that contain, refer to, or relate in any way to any Confidential Information, as well as any other property of Schwab in my possession or control, including, but not limited to, any information pertaining and/or relating to Schwab's customers and Prospective Customers, and all originals, copies and derivations of Schwab's documents, electronic and telephonic equipment, credit cards, security badges, and passwords. I agree that any Confidential Information stored, recorded or contained on my personal cell phone or any other personal electronic device will be immediately removed or deleted by me upon termination of my employment for any reason. I further agree that I will permit Schwab to inspect any materials provided by Schwab to me or developed by me as a result of or in connection with my employment with Schwab when I accept other employment or otherwise separate from my employment, regardless of where said materials are located.

9.  I further agree that for a period of eighteen (18) months after my employment with Schwab ceases beginning on the date of my termination (the "Proscribed Period"), I will not, directly or indirectly, or on behalf of any third party: (a) solicit or attempt to solicit any existing customers I serviced, directly or indirectly, and/or any Prospective Customers (with the exception of individuals or entities listed in the attached Exhibit B), or customers whose identities I learned as a result of my employment with Schwab, in an attempt to divert, transfer or otherwise take away business or prospective business from Schwab; or (b) solicit or attempt to solicit or induce (which shall include, but is not limited to, contact or communication in any manner for the purpose of soliciting or inducing) any employee, vendor or independent contractor of, or consultant to, Schwab to leave his or her employment or assignment with Schwab. I further agree that the purpose of this provision is to prevent the intentional or inadvertent unlawful use of Schwab's Confidential Information, including its trade secrets. If Schwab assigns me to service specific retail client account relationships (the "Specified Accounts"), I will not, for a period of one year following the termination of my employment with Schwab, initiate any contact for any purpose with any of the Specified Accounts (including notifying them of my new or subsequent place(s) of employment). This restriction will not apply to Schwab clients that I have identified in Exhibit B. I agree that I am being assigned to service the Specified Accounts on a non-exclusive basis, and that Schwab may reassign me to service other client accounts and/or assign other Schwab employees to service the Specified Accounts at any time and at Schwab's sole discretion. Nothing in this Paragraph 9 is intended to prevent me from discussing possible employment or prospective business with any customer, Prospective Customer, employee, consultant or independent contractor who contacts me directly on his or her own volition without my contact, solicitation or attempted solicitation of him or her. I understand that nothing in this Paragraph 9 limits my absolute obligation under

Paragraph 4 to never use Confidential Information for any other purpose at any time after my employment with Schwab ceases.

10. I represent and warrant that I do not have any agreement(s) with any former employer or other third party that would be breached by my performance of my duties at Schwab or that would limit, impair or otherwise adversely affect my performance of such duties, and that I will not take any action to breach any such agreement while I am employed by Schwab. In any event, I will not use or disclose to Schwab any confidential information that belongs to others. I have listed on Exhibit C to this Agreement all the confidential, proprietary, trade secret, non-solicitation and/or non-competition agreements to which I am subject and affirm that those agreements, if any, would not be breached by performance of my duties at Schwab. I also agree that I will disclose my obligations under this Agreement to any prospective or future employer or contractor and that my obligations under this Agreement in their entirety shall survive the termination of my employment with Schwab regardless of the reason for the termination.

11. I understand and agree that any breach of this Agreement may subject me to disciplinary action, up to and including termination of my employment (if I am still employed at Schwab). I also understand and agree that any breach of this Agreement by me will cause immediate irreparable injury to Schwab that cannot be adequately compensated by money damages or whose damages may be difficult to ascertain. If a court of competent jurisdiction or an arbitration panel finds that injunctive relief is appropriate to enforce any provision of this Agreement, I agree that Schwab is entitled to such injunctive relief, in order to, among other things, prevent a continuing breach or to protect and preserve the status quo pending full resolution of any dispute relating to this Agreement and under such circumstances, I specifically CONSENT TO THE ISSUANCE OF INJUNCTIVE RELIEF ordering, among other things:

    a. that I return to Schwab all records of any kind or nature (including but not limited to original and duplicate, typed and handwritten, soft (electronic, diskette) and hard copy and any other form) containing, referring to, or otherwise based on Confidential Information, and that I be prohibited from using or disclosing such records or the information in such records; and

    b. that, for the Proscribed Period, I shall be prohibited from soliciting or attempting to solicit (i) any Schwab customer whom I serviced (directly or indirectly) or any Schwab customer or Prospective Customer whose identity I learned as a result of my employment with Schwab to divert, transfer or otherwise take away business or prospective business from Schwab; and/or (ii) any employee, vendor or independent contractor of, or consultant to, Schwab to leave their employment or assignment with Schwab.

12. I understand and agree that in the event of a breach of this Agreement by Schwab or me, either party may seek interim injunctive relief against the other in an

appropriate forum. The parties agree to expedited discovery, including depositions, in connection with any proceeding alleging breach of this Agreement, whether or not the laws of the jurisdiction or the applicable rules of arbitration procedure imposed by a regulatory body or by agreement provide for such expedited discovery. To the extent applicable, this provision is intended to supplement and not to supersede the rights and obligations of the parties to this Agreement under the terms of the Form U-4 signed or to be signed by me to become a registered individual with the Company or the terms of a separate arbitration agreement. The parties further agree that a party's application to a court or an arbitration forum for injunctive relief shall not be construed as a waiver by the other party of the right to arbitrate or demand arbitration of claims, where applicable.

13. I understand and agree that should I violate Paragraph 7(a) or Paragraph 9(a) of this Agreement, Schwab will suffer irreparable harm and damages that may be difficult to ascertain at the time of the violation, including, but would not be limited to, costs associated with investigating, monitoring, restricting and/or terminating the use of Confidential Information by me in violation of this Agreement, revenue lost from assets diverted or transferred in violation of this Agreement, and costs associated with maintaining, restoring or repairing Schwab's relationship with customers or Prospective Customers that were solicited in violation of this Agreement. I therefore understand and agree that I will be liable to pay Schwab liquidated damages of four percent (4%) of any existing customer or Prospective Customer assets found by a court of competent jurisdiction or an arbitration panel to have been diverted, transferred or otherwise taken away from Schwab in violation of Paragraph 7(a) or Paragraph 9 above. I agree that this formula represents a reasonable estimate of Schwab's actual damages and does not constitute a penalty. I understand and agree that liquidated damages are in addition to any other relief that Schwab may be entitled to, including, but not limited to, injunctive relief and/or punitive damages.

14. I understand and agree that should I violate Paragraph 7(b) or Paragraph 9(b) of this Agreement with respect to Schwab employees, Schwab will suffer irreparable harm and damages that may be difficult to ascertain at the time of the violation, including, but not limited to, costs associated with investigating such violation, recruiting, hiring and training replacement employees, lost productivity; and other costs. I therefore understand and agree that with respect to each employee found by a court of competent jurisdiction or an arbitration panel to have been solicited or induced away from Schwab in violation of Paragraph 7(b) or Paragraph 9(b), I will be liable to pay Schwab liquidated damages equal to the greater of: one hundred percent (100%) of the employee's annual base salary, or seventy-five percent (75%) of the employee's total compensation in the previous calendar year, whichever is greater. I agree that this formula represents a reasonable estimate of Schwab's actual damages and does not constitute a penalty. I understand and agree that liquidated damages are in addition to any other relief that Schwab may be entitled to, including, but not limited to, injunctive relief and/or punitive damages.

15. This Agreement and the rights and obligations of the parties hereto shall bind and inure to the benefit of any successor or successors of Schwab, but neither this Agreement nor any rights or benefits hereunder may be assigned by me.

16. In the event that a party to this Agreement brings an action to enforce any provision of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs incurred to enforce such claim.

17. If any provision or portion of any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof will be enforced to the maximum extent permissible, and the remaining provisions or portions thereof shall remain in full force and effect. I agree that the terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by Schwab, without giving effect to such state's conflict of law principles.

18. This Agreement shall be effective as of the date written below. **I understand and agree that part of the consideration for this Agreement is the continuation of my employment relationship with Schwab, but that nothing in this Agreement changes my "at will" employment status, and that either Schwab or I may end the employment relationship at any time, with or without notice, for any reason or no reason at all.**

---

**EXHIBIT A**
California Labor Code Section 2870

    a. Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
        1. Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
        2. Result from any work performed by the employee for the employer.
    b. To the extent that a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**X** click here to electronically inital form

---

**EXHIBIT B**
List of family members and other relatives (identified by familial status) and individuals or entities that I provided financial services to prior to joining Schwab.

**X** click here to electronically inital form

**EXHIBIT B**
List of Prior Agreements. If you have a copy of a prior agreement, please provide it to
your manager.


**X** click here to electronically inital form

**Signature**
I represent that I am the individual indicated in the "Work Contact Information" section
in the upper left hand corner of this screen, that I accessed this screen by logging in to the
Schwab network and using my unique password or biometric device, and that I have not
shared my password with anyone.

By clicking "I Agree" below I am creating a binding contract with Schwab, just as
enforceable as if it were a handwritten signature.

I Agree

CHARLES SCHWAB CONFIDENTIALITY, NONSOLICITATION, AND
INTELLECTUAL PROPERTY OWNERSHIP AGREEMENT 2008 (Simplified
Confidentiality Agreement - Rev. 3/08)
### CONFIRMATION PAGE

Confirmation of Agreement to and Signature on Confidentiality, Nonsolicitation and Assignment Agreement.

This is your Confirmation of your electronic agreement to the Confidentiality, Nonsolicitation and Assignment
Agreement. You may print this copy and record of our agreement and retain it for your records.

To PRINT this page, simply click the PRINT BUTTON on your browser.

**Employee:** Lance Mcmurry
**Employee ID:** 07096
**Employee Logon:** us\lance.mcmurry
**Employee Email:** Lance.Mcmurry@schwab.com
**Employee Telephone:** +1(239)436-1552
**Employee Manager:** Joe Lacagnina

**Date of Electronic Signature:** 05/02/2008 21:30:53 PM EST

**I AM ENTERING INTO THIS AGREEMENT IN CONSIDERATION FOR** my
initial or continued at-will employment with Charles Schwab & Co., Inc., its parent
company and/or its subsidiaries, affiliates, joint venturers, and successors (collectively,
"Schwab"), and the compensation and other benefits I receive from Schwab, including
my participation in bonus and incentive compensation plans for which I am eligible.
Acknowledging the receipt and adequacy of this consideration, and intending to be
legally bound, I agree as follows:

    a.  that I will maintain the confidentiality of all Confidential Information and
Intellectual Property, as defined below, that I develop or obtain while I work at
Schwab;

    b.  that Schwab owns all Confidential Information and Intellectual Property, and that
I will not assert any claim to the Confidential Information and/or Intellectual
Property; and

    c.  that I will not solicit or encourage Schwab's employees or Schwab's current or
prospective clients to leave Schwab.

The scope of these obligations, and some of the possible consequences for breaching
them, are described in more detail below.

    1.  **Protection of Schwab's Confidential Information and Intellectual Property.**
While working at Schwab, I will develop and/or have access to Schwab's
Confidential Information and/or Intellectual Property, as defined in Paragraph 2. I



**EXHIBIT**

"D"

acknowledge that Confidential Information and Intellectual Property is the exclusive property of Schwab, its business partners, licensors, and/or clients, and I agree not to assert any claim to it. Except as permitted in Paragraph 7, I agree not to use or disclose any Confidential Information and/or Intellectual Property during or after my employment with Schwab.

2. **What is Schwab Confidential Information and Intellectual Property?** "Confidential Information" is all information learned during my employment that is not generally known to the public at the time it is made known to me. It includes, but is not limited to: "Trade Secrets" and "Developments," as defined below; names, addresses, phone numbers, email addresses, account numbers or financial information pertaining to Schwab clients or prospective clients; proprietary software designs and hardware configurations; proprietary technology; business methods or strategies; new product and service ideas; marketing, financial, research and sales data; information sufficient to identify clients, vendors, or personnel; client, vendor or personnel lists, contact, account and related information; and all information Schwab treats or is obligated to treat as confidential, privileged, or for internal use only, whether or not owned by Schwab. "Trade Secrets" is any information that (i) has economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) Schwab takes reasonable steps to protect as secret. "Intellectual Property" is Schwab's copyrighted materials, trademarks, service marks, logos, patents, Trade Secrets, and other intellectual property and proprietary rights.

3. **Agreement Not to Solicit.** While I work for Schwab and for 18 months after my employment ends, I will not directly or indirectly solicit or induce: (a) any existing or prospective Schwab clients I serviced or about whom I gained Confidential Information (other than those listed in Exhibit A) in an attempt to divert, transfer, or otherwise take away business or prospective business from Schwab; and/or (b) any Schwab employee or contingent worker to leave his or her employment or engagement with Schwab.

4. **Removal and Return of Schwab Property.** I will not remove any Schwab property, including any Confidential Information and/or Intellectual Property, in original or copied form, in either electronic or hardcopy form, except as required for me to carry out my job duties while employed by Schwab. Upon termination of my employment with Schwab for any reason, my acceptance of other employment, or at Schwab's request, I will immediately return to Schwab all Schwab property and documents, including but not limited to Confidential Information and/or Intellectual Property; any Schwab-issued credit cards, security badges, keys and Secure ID tokens; and all Schwab-issued electronic and telephonic equipment including but not limited to computers, mobile phones, personal data assistants, CD-ROMs, DVDs, floppy disks, Zip drives, USB storage devices, flash drives, memory cards, or other electronic devices ("Electronic Devices").

5. **Obligation to Protect Confidential Information and Intellectual Property.** I will promptly notify Schwab if I become aware of or suspect any unauthorized use or disclosure of Confidential Information and/or Intellectual Property by me or anyone else, whether intentional or accidental.

6. **Schwab's Ownership of Intellectual Property "Developments."**

   a. **Disclosure of Developments While Employed by Schwab.** I will promptly disclose in confidence to Schwab all inventions, improvements, designs, original works of authorship, and processes, including but not limited to all computer software programs and databases, whether or not protected or capable of protection under intellectual property or other laws, as well as all works based upon, derived from, reduced from, collecting, containing or making use of any of the foregoing or of any other Confidential Information or Intellectual Property of Schwab (collectively, "Developments") that I create, make, conceive, implement, or first reduce to practice, either alone or with others, while I am employed by Schwab, and: (a) result from any work I perform for Schwab, whether or not in the normal course of my employment or during normal business hours; (b) reasonably relate to the actual or anticipated business, research or development of Schwab; or (c) are developed with the use of Schwab resources, facilities, Confidential Information and/or Intellectual Property.

   b. **Help in Confirming Ownership.** I must promptly disclose Developments to Schwab whether or not the Developments are patentable, copyrightable, or protectable as Trade Secrets. I agree all Developments will be the exclusive property of Schwab, and I irrevocably assign to Schwab all rights, title, and interest I may have or acquire in and to the Developments and the right to secure registrations, renewals, reissues, and extensions in the Developments. I will sign any documents and do all things necessary, whether during my employment or after, to assist Schwab to register, perfect, maintain and enforce Schwab's rights in any Developments, without any additional compensation. If I fail or refuse for any reason to sign any document Schwab requires to perfect its ownership of the Developments, I appoint Schwab as my attorney-in-fact (this appointment to be irrevocable and to be a power coupled with an interest) to act on my behalf and to execute all such documents.

   c. **State Laws Relating to Ownership of Developments.** I understand if I am or become a California resident while employed by Schwab, then this Paragraph 6 will not apply to any Developments which fully qualify under Section 2870 of the California Labor Code, attached as Exhibit B to this Agreement. To the extent other similar laws may apply to residents of other states, the terms of Paragraph 6 shall be limited solely to the extent provided by the applicable laws of such states.

    d. **Pre-Existing Intellectual Property.** To the extent I have any pre-existing patent, trademark, or copyright registrations, I have listed them in Exhibit C. I understand Schwab does not want to use any other person's intellectual property unlawfully. I agree to indemnify and hold Schwab harmless against any liability, and pay any loss or expense Schwab incurs, arising out of any claim that I misappropriated or infringed proprietary rights of a former employer or any other third party.

7. **Permissible Disclosure of Confidential Information and/or Intellectual Property.** I can only use or disclose Confidential Information and/or Intellectual Property to the extent: (a) necessary to perform my job duties at Schwab; (b) I receive advance written permission from an authorized senior or executive officer of Schwab; (c) I am legally compelled by subpoena or other legal process to disclose the Confidential Information and/or Intellectual Property, subject to the procedures in Paragraph 9; or (d) disclosure is sought by a government entity, regulatory agency, or self regulatory organization, subject to the procedures in Paragraph 9. I understand that Schwab's policy prohibits departing employees from taking client lists and account information.

8. **Questions About Confidential Information and/or Intellectual Property.** If I am unsure whether information is Confidential Information and/or Intellectual Property, I will treat it as Confidential Information and/or Intellectual Property unless I receive advance written permission from an authorized senior or executive officer of Schwab.

9. **Subpoenas and Other Legal Requests for Disclosure.** I will give Schwab prompt notice in writing before disclosing any Confidential Information and/or Intellectual Property under Paragraph 7 subsections (c) and (d). If Schwab does not obtain an order preventing the disclosure, I agree to disclose only that Confidential Information and/or Intellectual Property that I am legally compelled to disclose and to exercise reasonable efforts to ensure that the Confidential Information and/or Intellectual Property will be treated confidentially.

10. **Discovery and Injunctive Relief.** In the event I violate, or Schwab reasonably believes I am about to violate, this Agreement, I agree Schwab is entitled to injunctive relief to prevent the violation(s) and/or preserve the status quo. I agree that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and Schwab shall have the right to conduct forensic examination(s) of Electronic Devices in my possession or control, if Schwab reasonably believes such devices contain Confidential Information and/or Intellectual Property. I further agree that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis. If any dispute under this Agreement is arbitrable, then I understand my agreement to engage in discovery as outlined in this paragraph is an essential term of my arbitration agreement with Schwab, and these provisions are intended to supplement and modify any applicable arbitration rules.

11. **Liquidated Damages.** If I solicit clients or employees in violation of Paragraph 3, and/or use or disclose Confidential Information relating to clients and/or their accounts in violation of Paragraph 1, I understand Schwab will suffer damages that may be difficult to quantify at the time of the violation, including, but not limited to: costs associated with investigating, monitoring, or remedying the misuse of Confidential Information; costs associated with maintaining, restoring or repairing Schwab's relationship with current and prospective clients; revenue lost from client assets diverted or transferred; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity. Therefore, if I violate Paragraph 3, and/or Paragraph 1 relating to clients and/or their accounts, I agree to pay Schwab the following liquidated damages: (a) four percent (4%) of any client assets diverted from Schwab for any client who was solicited and/or whose Confidential Information was used or disclosed; and/or, (b) seventy-five percent (75%) of the most recent full year's total annual compensation paid by Schwab to each employee solicited or induced to leave his or her employment. I agree that these formulas represent reasonable estimates of the compensatory damages that Schwab will incur as a result of violations of Paragraph 3 and/or Paragraph 1 relating to clients and/or their accounts, and are not a penalty. These liquidated damages are in addition to any other non-compensatory relief that Schwab may be entitled to, including but not limited to injunctive relief and/or punitive damages.

12. **General Provisions.** I agree that if Schwab or I bring an action to enforce any provision of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs to enforce such claim. If any provision of this Agreement is found to be invalid or unenforceable, I agree that such provision should be deemed modified to the extent necessary to make it enforceable. If a court or arbitration panel declines to amend the provision to make it enforceable, then the remaining provisions of this Agreement shall remain in full force and effect. The terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by Schwab, without giving effect to such state's conflict of law principles. I agree that this Agreement supplements any prior agreements I have with Schwab, all of which remain in full force and effect.

---

**EXHIBIT A**
List of family members and other relatives (identified by familial status) and individuals or entities to whom I provided financial services prior to joining Schwab:

**X** click here to electronically inital Exhibit A

**EXHIBIT B**
California Labor Code Section 2870

a. Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    1. Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    2. Result from any work performed by the employee for the employer.

b. To the extent that a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

X click here to electronically inital Exhibit B

---

**EXHIBIT C**
Pre-Existing Intellectual Property Registrations:


X click here to electronically inital Exhibit C


**Signature**
I represent that I am the individual indicated in the "Work Contact Information" section in the upper left hand corner of this screen, that I accessed this screen by logging in to the Schwab network and using my unique password, and that I have not shared my password with anyone.

By clicking "I Agree" below I am creating a binding contract with Schwab, just as enforceable as if it were a handwritten signature.

I Agree

## INTRODUCTION - "PRIVACY IS EVERYBODY'S BUSINESS"

Various Privacy Laws at the state and federal levels govern much of the information that is used by Schwab employees to perform their job responsibilities. Accordingly, it is essential that all Schwab employees understand the importance of the proper handling of this information in their day-to-day performance of their jobs.

Privacy regulations require Schwab employees to take appropriate precautions when handling clients' non-public personal client information (NPI) to protect it from unauthorized access. Schwab's Privacy Policy states the company's standards and practices for protecting and sharing client NPI. All Schwab employees, contractors and vendors are required to comply with the policy.

The Privacy Policy is provided to clients when they open an account and annually thereafter. Schwab employees, temporary employees and contractors should be familiar with the Privacy Policy and always handle client NPI in accordance with this and all related Privacy, Compliance Schwab Information Security and other Schwab policies.

Failure to abide by these policies could compromise the confidentiality of NPI and other sensitive Schwab data and could cause negative consequences for the firm, including damage to our reputation, loss of customer confidence, regulatory sanctions, litigation, financial loss, competitive disadvantage and/or business interruption.

Privacy Information Handling Guidelines are provided to help you secure client NPI from the time it is provided to Schwab by the client until it is appropriately disposed of at its proper time.

## A. WHAT INFORMATION IS COVERED BY THE PRIVACY POLICY?

At Schwab, NPI is information that can identify a customer or prospect through his/her name, address, phone number(s), Schwab account number(s), and cookies. It is collected through account applications, service registration, requests for information (LEAD kit requests), and transaction history on balances, positions, etc. Since this information is personal and private, it must be protected from unauthorized access or use.

Examples of NPI include:

- information that can identify a person such as name, home and work addresses, phone number(s), email address(es), social security number and Schwab account number(s);
- information provided on an account or employment application;
- account balance information;
- the fact that an individual is or has been a Schwab customer; and
- information from a consumer report (e.g. credit report).

## B. THE CHARLES SCHWAB & CO., INC. PRIVACY POLICY

The privacy policy of Charles Schwab & Co., Inc., posted on our web site states simply that we do not sell customer or prospect NPI to third parties. Only transaction and experience information is shared between Schwab affiliates unless we first obtain customer consent, or sharing the information is necessary to service the relationship (e.g. sending information to a statement vendor).

Other Schwab affiliates may have a different privacy policy. If you are employed by an affiliate of Charles Schwab & Co., Inc., you should read and be familiar with the privacy policy of that affiliate.

## C. ADDITIONAL REQUIREMENTS

EXHIBIT

"E"

Employees must be aware of and understand Schwab's Privacy Policy and how to protect customer NPI. All employees are required to complete the on-line training module "Privacy Basics". Additional training modules are available for employees who have specific job functions that deal with NPI (e.g Client Contact, Manager/Supervisor and Information Handling). Each manager and supervisor should determine which of their staff should complete these additional modules. Information about these training modules can be found at the Privacy website.

All privacy training must be verifiable by federal regulators (for example, the Securities and Exchange Commission and the Federal Reserve Board audit Schwab.) The on-line training modules records completion of the Privacy modules for each employee. Managers and supervisors can confirm completion by accessing the Reportal function provided by Schwab U.

## D. HOW DOES PRIVACY INVOLVE ME?

NPI impacts the way you and your department conduct business when an employee has access to or shares NPI in one or more of the following ways:

- vendor relationships;
- email and the internet;
- access through the mainframe, client/server, and/or laptop;
- document use, storage and disposal; and
- physical security.

## E. WHAT ARE MY RESPONSIBILITIES?

"Privacy is everybody's business" and that means the protection of customer's NPI is everybody's responsibility. Some of the specific areas that should be considered include:

- Do not send NPI via the internet unless you are using secure, Schwab-approved methods of transmitting customer data to an approved vendor or affiliate. (see the Information Security website for more details).
- Protect information on desktops or laptops: create a unique password, restrict access, and dispose of files when they are no longer used.
- Change your password often and follow our password guidelines.
- Lock your workstation when you leave your work area, even for a short time or log-off after finishing your session to prevent unauthorized access. Never store NPI on the hard drive of a laptop. NPI stored on CDs or diskettes should always be password protected.
- Printed documents containing NPI should be properly labeled; for example, "sensitive", "attorney-client privilege" or "internal use only."
- Always store paper documents computer disks, software and microfiche containing NPI under lock and key. Safeguard all keys, and contact security immediately if they are missing.
- Dispose of documents, files or electronic media with NPI by placing them in a secured storage bin clearly intended and labeled for disposal. Example: Instashred Security Services, Inc. NEVER PLACE DOCUMENTS WITH NPI IN COMMON TRASH BINS.

Verbal communications where NPI is discussed should not be conducted public places, such as elevators, restaurants, or on public transportation.

## California Security Breach Notification Statute (SB 1386)

On July 1, 2003, the California Security Breach Notification Statute (SB 1386) went into effect. The law applies to any company that does business in California and maintains computerized information about California residents. Therefore, all Schwab affiliates are subject to 1386.

The law requires that the firm notify California residents of any breach of the firm's computer systems that results in the residents' personal information being acquired by an unauthorized person. This covers

employee and customer information.

Examples of potential breaches include:

- A lost or stolen laptop or files containing confidential information
- Unauthorized access (by hackers, employees, independent contractors, etc.) to systems or documents containing confidential information
- Improper hard or soft disk disposal
- Improperly addressed e-mail containing confidential information

If an employee learns of a potential breach or violation of Schwab's information security policies, it must be reported to the appropriate security team within Schwab. It doesn't matter whether the breach or violation was directly observed by the employee or is discovered through a vendor or a third-party service provider that receives or maintains confidential Schwab information. Schwab vendors should be notified to confirm their understanding of their requirement to report breaches to the Schwab employee responsible for the vendor or service-provider relationship.

How to Report a Security Breach

An employee must report a potential breach immediately by sending an email to the "Breach Notification Team" distribution list on Outlook.

The report should include:

- A brief description of the incident, including when it occurred (if known);
- A description of the system(s) affected (if known); and
- How the person first learned about the incident (including information obtained from the vendor, if a vendor is involved).

## F. RISKS AND CONSEQUENCES OF PRIVACY VIOLATIONS

What might happen if NPI were shared without consent?

- Damage to our brand through a breach of our customer's trust;
- Regulatory sanctions, including fines;
- Findings by regulators and/or arbitration panels of negligence and/or non-compliance with laws, rules and regulations;
- Accidental release of non-public personal information;
- Fraudulent access, or intentional release;
- Lawsuits and arbitrations;
- Termination of employment; and
- Punitive sanctions, including fines and imprisonment under the fraud provisions of GLB.

## G. RESOURCES

- IWIN (jumpword: "IWIN") from the SchWEB Then search for Guidelines for Handling Non-public Information
- Privacy Policy (jumpword "Privacy")
- Email: Privacy.Office@Schwab.com

## THE CHARLES SCHWAB CORPORATION

Dear Fellow Employee:

This is your copy of The Charles Schwab Corporation Code of Business Conduct and Ethics ("The Code") approved by The Board of Directors of the Charles Schwab Corporation. It applies to your service to The Charles Schwab Corporation and its subsidiaries and affiliates, and augments any additional standards that may be applicable to your position. The Code, which is posted on our public website, is designed to make clear to our customers and shareholders our personal and corporate commitment to the highest level of business conduct.

We urge you to read these policies and to reflect on their content. While the concepts behind these policies are not new to us, it is important that we each take the time to reflect on their meaning and to ensure that all of our practices are consistent with the Code.

This positive declaration of our commitment to ethical excellence is important in defining the nature of our firm and in communicating these standards to all with whom we do business.

*Chuck*

Charles Schwab
Chairman and Chief Executive Officer
The Charles Schwab Corporation

*C*

Carrie Dwyer
EVP, Corporate Oversight
The Charles Schwab Corporation

# Confidentiality of Information

As a financial services company, we have particular responsibilities for safeguarding the information of our clients and the proprietary information of our company. You should be mindful of this obligation when you use the telephone, fax, telex, electronic mail, and other electronic means of storing and transmitting information. You should not discuss confidential information in public areas where it can be overheard, read confidential documents in public places, nor leave or discard confidential documents where they can be retrieved by others.

### Confidentiality of Client Information

Information concerning the identity of clients and their transactions and accounts is confidential. Such information may not be disclosed to persons within the company except as they may need to know it in order to fulfill their responsibilities to the company. You may not disclose such information to anyone or any firm outside the company except: (i) in the event an outside firm needs to know the information in order to perform services for the company and is bound to maintain its confidentiality, (ii) when a client has consented to the disclosure after having been given an opportunity to request that the information not be shared, (iii) as required by law, or (iv) as authorized by the Compliance Department or Office of Corporate Counsel.

Information regarding client orders must not be used in any way to influence trades in personal accounts or in the accounts of other clients, including those of other employees, officers and directors. Trading ahead of a client's order is known as frontrunning and is prohibited. Following a client's order with your trading activity is known as piggybacking or shadowing and is likewise prohibited. If you reasonably believe improper

trading in personal or client accounts has occurred, you must report such conduct to the Corporate Responsibility Officer or the Ombudsperson.

### Privacy

Schwab is committed to safeguarding our customers' privacy, and we limit how we share customer information with others. As set out in our Privacy Policy, we do not sell personally identifiable customer information to anyone. We share customer information with third parties only in certain limited circumstances, such as to help us process transactions and service accounts, in connection with joint marketing arrangements, and for other specific purposes permitted by applicable federal and state privacy laws. We share information with our affiliates as allowed by applicable laws and, where required, only after giving customers the opportunity to opt out of such sharing.

You should be familiar with Schwab's Privacy Policy and the limitations on how customer information can be used and shared. If you have any questions about whether any particular use or disclosure of customer information is permitted, you should direct them to the Privacy Office. You should also be familiar with the procedural and systemic safeguards we maintain to protect the security of customer information, and should report any breaches of these safeguards in accordance with Schwab's procedures.

### Proprietary Information of the Company

You have the responsibility to safeguard proprietary information of the company and comply with the company's Confidentiality, Non-solicitation and Assignment Agreement. Proprietary information includes intellectual property (copyrights,

Confidentiality of Information

trademarks or patents or trade secrets), particular
know-how (business or organizational designs, or
business, marketing or service plans or ideas) and
sensitive information about the company
(databases, records, salary information or
unpublished financial reports). If you have any
questions about what constitutes proprietary
information, or if you believe such information has
been compromised, contact the Office of Corporate
Counsel.

### Protection and Use of Company Assets

You are obligated to protect the company's assets
and ensure their efficient use. Theft, carelessness
and waste have a direct impact on the company.
Company equipment should not be used for non-
company business, though incidental personal use
may be permitted. Breaches of this obligation must
be reported to the Compliance Department.



June 11, 2008

Dear Mr. Lacagnina:

This is my letter of resignation from Charles Schwab, effective immediately. Please inform my clients that I can be reached at my new firm, Banc of America Investments Services, Inc., at 4501 Tamiami Trail North, Suite 400, Naples, FL 34103, (239) 290-0029.

Please be advised of the following:

I will not use any Schwab records to obtain contact information for any of my former Schwab customers.

To the best of my knowledge, I do not have in my possession any Schwab records in any form (including electronic) pertinent to Schwab customers. Further, I did not deliver any such records to Banc of America Investments, Inc. If you are concerned about the location of any records, please contact me through my attorney and I will be cooperative in helping to locate them.

I will not solicit any Schwab customers in an attempt to take away business from Schwab.

I will not say anything disparaging about Schwab to any Schwab customer.

I have retained an attorney to represent me. In the event Schwab takes legal action against me, I demand that you give the following attorney due process notice of such action:

Peter J. Aldrich, Esq.
100 Village Square Crossing, Suite 201
Palm Beach Gardens, FL 33410
561-775-7797; 561-775-1075(fax)
e-mail: peter.aldrich@aldrichlaw.net

I also request that you direct Schwab's counsel to inform any judge or arbitrators before whom any legal action is filed or pending, that I am represented by the above counsel.

Thank you.

Sincerely,

LANCE MCMORRY



EXHIBIT

"G"

Office of Corporate Counsel
101 Montgomery Street San Francisco CA 94104
tel (415) 636 7000

*charles* SCHWAB

Direct Line (415) 636-3763
Facsimile (415) 636-5304

June 11, 2008

**VIA UPS**

Mr. Lance McMurry
1952 Isla De Palma Circle
Naples, FL 34119

Dear Mr. McMurry:

This letter is a reminder of your contractual obligations pursuant to your Confidentiality, Non-Solicitation and Assignment Agreement with Schwab.

A copy of the most recent Confidentiality, Non-Solicitation and Assignment Agreement signed by you on May 2, 2008 is enclosed for your reference. In the agreement, you acknowledged that as a Schwab employee you would be given access to certain confidential and proprietary information belonging to Schwab, including information relating to Schwab customers. In return for your employment and this access, you agreed to maintain such information in the strictest confidence and not to divulge it or use it for your own benefit, or for the benefit of anyone other than Schwab.

Please note that paragraph 2 of the Agreement defines "Confidential Information" to include, among other things, "names, addresses, phone numbers, email addresses, account numbers or financial information pertaining to Schwab clients or prospective clients;...information sufficient to identify clients, vendors, or personnel; [and] client, vendor or personnel lists, contact, account and related information." In paragraph 1, you agreed to not "use or disclose any Confidential Information... after [your] employment with Schwab."

Furthermore, in paragraph 4 you agreed as follows: "I will not remove any Schwab property, including any Confidential Information and/or Intellectual Property, in original or copied form, in either electronic or hardcopy form, except as required for me to carry out my job duties while employed by Schwab. Upon termination of my employment with Schwab for any reason..., I will immediately return to Schwab all Schwab property and documents, including but not limited to Confidential Information...."

Paragraph 3 precludes solicitation of Schwab's clients for a period of eighteen (18) months.

Now that you are no longer employed by Schwab, contacting, soliciting or attempting to solicit Schwab's existing and prospective customers would violate your Agreement with Schwab. The contractual provisions cited above make clear that you may not use the names and telephone numbers of Schwab's customers for any purpose, including without limitation, for

Charles Schwab & Co, Inc. Member, SIPC


EXHIBIT
"H"

June 11, 2008
Page 2

*charles* SCHWAB

contacting Schwab's customers to inform them of your new employment. Even if you were to recreate Schwab's customer list from memory, or with the aid of a publicly available source (such as a telephone book), you would be using your knowledge of Schwab's Confidential Information (as that term is defined in your Agreement) in violation of your contractual obligations.[1]  Moreover, initiating contact with Schwab's customers constitutes a violation of the non-solicitation restrictions set forth in paragraph 3 of your Agreement.[2]

Accordingly, Schwab requires that you refrain from sending any letters, information or documentation to Schwab's existing and prospective customers or contacting them by telephone, fax, mail, email or in person.  Pursuant to paragraph 4 of your Agreement, Schwab also demands that you immediately return to Schwab all proprietary or confidential documents in your possession relating to Schwab's business or its customers, including but not limited to any lists of customer names and addresses, computer screen printouts, and calendars or day-timers containing the names, addresses, email addresses, or telephone numbers of Schwab customers. Further, Schwab requires that you remove any such confidential information stored on your personal cell phone, Blackberry, personal data assistant or computer.

Schwab expects your full compliance with this letter and with the terms of your Confidentiality Agreement, and will be monitoring this situation to ensure your compliance.  If you have any questions about this matter, please do not hesitate to contact me.

Very truly yours,

Mai Klaassen
Corporate Counsel
Charles Schwab & Co., Inc.

Enclosure

---

[1] See e.g., Al Minor & Associates v. Martin, 117 Ohio St. 3d 58, 63 (2008) ("The widely accepted rule is that memorization is no defense, and that unauthorized asportation of data in one's head is no more proper than taking it on paper or in electronic form.") (quoting James Pooley, Trade Secrets (7th Ed.2001) 6-14, Section 6.02[2][c]).

[2] See e.g., Merrill Lynch v. Schultz, 2001 WL 1681973 at *3 (2001 D.D.C.) ("The Court is unpersuaded by the subtle distinction the defendant attempts to draw in this case between his action, which he labels an announcement, and solicitation, which is prohibited by his contract with Merrill Lynch. It is a distinction without a difference in this case. Even if the defendant merely calls his clients and states that he has resigned from Merrill Lynch and now works for Dean Witter, the Court finds that his initiation of targeted contact through the use of client information gained through his employment with Merrill Lynch constitutes prohibited solicitation.  Despite the "announcement" label the defendant places on it, such initiated, targeted contact is tantamount to solicitation because there is no reason to believe that a customer on the receiving end of such a phone call does not assume that the broker wishes for him to transfer his account.").

Charles Schwab & Co., Inc. Member SIPC.

CHARLES SCHWAB CONFIDENTIALITY, NONSOLICITATION, AND INTELLECTUAL PROPERTY OWNERSHIP AGREEMENT 2008 (Simplified Confidentiality Agreement - Rev. 3/08)
**CONFIRMATION PAGE**

Confirmation of Agreement to and Signature on Confidentiality, Nonsolicitation and Assignment Agreement.

This is your Confirmation of your electronic agreement to the Confidentiality, Nonsolicitation and Assignment Agreement. You may print this copy and record of our agreement and retain it for your records.

To PRINT this page, simply click the PRINT BUTTON on your browser.

**Employee:** Lance Mcmurry
**Employee ID:** 07096
**Employee Logon:** us\lance.mcmurry
**Employee Email:** Lance.Mcmurry@schwab.com
**Employee Telephone:** +1(239)436-1552
**Employee Manager:** Joe Lacagnina

**Date of Electronic Signature:** 05/02/2008 21:30:53 PM EST

**I AM ENTERING INTO THIS AGREEMENT IN CONSIDERATION FOR** my initial or continued at-will employment with Charles Schwab & Co., Inc., its parent company and/or its subsidiaries, affiliates, joint venturers, and successors (collectively, "Schwab"), and the compensation and other benefits I receive from Schwab, including my participation in bonus and incentive compensation plans for which I am eligible. Acknowledging the receipt and adequacy of this consideration, and intending to be legally bound, I agree as follows:

    a.  that I will maintain the confidentiality of all Confidential Information and Intellectual Property, as defined below, that I develop or obtain while I work at Schwab;

    b.  that Schwab owns all Confidential Information and Intellectual Property, and that I will not assert any claim to the Confidential Information and/or Intellectual Property; and

    c.  that I will not solicit or encourage Schwab's employees or Schwab's current or prospective clients to leave Schwab.

The scope of these obligations, and some of the possible consequences for breaching them, are described in more detail below.

    1.  **Protection of Schwab's Confidential Information and Intellectual Property.** While working at Schwab, I will develop and/or have access to Schwab's Confidential Information and/or Intellectual Property, as defined in Paragraph 2. I

acknowledge that Confidential Information and Intellectual Property is the exclusive property of Schwab, its business partners, licensors, and/or clients, and I agree not to assert any claim to it. Except as permitted in Paragraph 7, I agree not to use or disclose any Confidential Information and/or Intellectual Property during or after my employment with Schwab.

2. **What is Schwab Confidential Information and Intellectual Property?** "Confidential Information" is all information learned during my employment that is not generally known to the public at the time it is made known to me. It includes, but is not limited to: "Trade Secrets" and "Developments," as defined below; names, addresses, phone numbers, email addresses, account numbers or financial information pertaining to Schwab clients or prospective clients; proprietary software designs and hardware configurations; proprietary technology; business methods or strategies; new product and service ideas; marketing, financial, research and sales data; information sufficient to identify clients, vendors, or personnel; client, vendor or personnel lists, contact, account and related information; and all information Schwab treats or is obligated to treat as confidential, privileged, or for internal use only, whether or not owned by Schwab. "Trade Secrets" is any information that (i) has economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) Schwab takes reasonable steps to protect as secret. "Intellectual Property" is Schwab's copyrighted materials, trademarks, service marks, logos, patents, Trade Secrets, and other intellectual property and proprietary rights.

3. **Agreement Not to Solicit.** While I work for Schwab and for 18 months after my employment ends, I will not directly or indirectly solicit or induce: (a) any existing or prospective Schwab clients I serviced or about whom I gained Confidential Information (other than those listed in Exhibit A) in an attempt to divert, transfer, or otherwise take away business or prospective business from Schwab; and/or (b) any Schwab employee or contingent worker to leave his or her employment or engagement with Schwab.

4. **Removal and Return of Schwab Property.** I will not remove any Schwab property, including any Confidential Information and/or Intellectual Property, in original or copied form, in either electronic or hardcopy form, except as required for me to carry out my job duties while employed by Schwab. Upon termination of my employment with Schwab for any reason, my acceptance of other employment, or at Schwab's request, I will immediately return to Schwab all Schwab property and documents, including but not limited to Confidential Information and/or Intellectual Property; any Schwab-issued credit cards, security badges, keys and Secure ID tokens; and all Schwab-issued electronic and telephonic equipment including but not limited to computers, mobile phones, personal data assistants, CD-ROMs, DVDs, floppy disks, Zip drives, USB storage devices, flash drives, memory cards, or other electronic devices ("Electronic Devices").

5. **Obligation to Protect Confidential Information and Intellectual Property.** I will promptly notify Schwab if I become aware of or suspect any unauthorized use or disclosure of Confidential Information and/or Intellectual Property by me or anyone else, whether intentional or accidental.

6. **Schwab's Ownership of Intellectual Property "Developments."**

   a. **Disclosure of Developments While Employed by Schwab.** I will promptly disclose in confidence to Schwab all inventions, improvements, designs, original works of authorship, and processes, including but not limited to all computer software programs and databases, whether or not protected or capable of protection under intellectual property or other laws, as well as all works based upon, derived from, reduced from, collecting, containing or making use of any of the foregoing or of any other Confidential Information or Intellectual Property of Schwab (collectively, "Developments") that I create, make, conceive, implement, or first reduce to practice, either alone or with others, while I am employed by Schwab, and: (a) result from any work I perform for Schwab, whether or not in the normal course of my employment or during normal business hours; (b) reasonably relate to the actual or anticipated business, research or development of Schwab; or (c) are developed with the use of Schwab resources, facilities, Confidential Information and/or Intellectual Property.

   b. **Help in Confirming Ownership.** I must promptly disclose Developments to Schwab whether or not the Developments are patentable, copyrightable, or protectable as Trade Secrets. I agree all Developments will be the exclusive property of Schwab, and I irrevocably assign to Schwab all rights, title, and interest I may have or acquire in and to the Developments and the right to secure registrations, renewals, reissues, and extensions in the Developments. I will sign any documents and do all things necessary, whether during my employment or after, to assist Schwab to register, perfect, maintain and enforce Schwab's rights in any Developments, without any additional compensation. If I fail or refuse for any reason to sign any document Schwab requires to perfect its ownership of the Developments, I appoint Schwab as my attorney-in-fact (this appointment to be irrevocable and to be a power coupled with an interest) to act on my behalf and to execute all such documents.

   c. **State Laws Relating to Ownership of Developments.** I understand if I am or become a California resident while employed by Schwab, then this Paragraph 6 will not apply to any Developments which fully qualify under Section 2870 of the California Labor Code, attached as Exhibit B to this Agreement. To the extent other similar laws may apply to residents of other states, the terms of Paragraph 6 shall be limited solely to the extent provided by the applicable laws of such states.

    d. **Pre-Existing Intellectual Property.** To the extent I have any pre-existing patent, trademark, or copyright registrations, I have listed them in Exhibit C. I understand Schwab does not want to use any other person's intellectual property unlawfully. I agree to indemnify and hold Schwab harmless against any liability, and pay any loss or expense Schwab incurs, arising out of any claim that I misappropriated or infringed proprietary rights of a former employer or any other third party.

7. **Permissible Disclosure of Confidential Information and/or Intellectual Property.** I can only use or disclose Confidential Information and/or Intellectual Property to the extent: (a) necessary to perform my job duties at Schwab; (b) I receive advance written permission from an authorized senior or executive officer of Schwab; (c) I am legally compelled by subpoena or other legal process to disclose the Confidential Information and/or Intellectual Property, subject to the procedures in Paragraph 9; or (d) disclosure is sought by a government entity, regulatory agency, or self regulatory organization, subject to the procedures in Paragraph 9. I understand that Schwab's policy prohibits departing employees from taking client lists and account information.

8. **Questions About Confidential Information and/or Intellectual Property.** If I am unsure whether information is Confidential Information and/or Intellectual Property, I will treat it as Confidential Information and/or Intellectual Property unless I receive advance written permission from an authorized senior or executive officer of Schwab.

9. **Subpoenas and Other Legal Requests for Disclosure.** I will give Schwab prompt notice in writing before disclosing any Confidential Information and/or Intellectual Property under Paragraph 7 subsections (c) and (d). If Schwab does not obtain an order preventing the disclosure, I agree to disclose only that Confidential Information and/or Intellectual Property that I am legally compelled to disclose and to exercise reasonable efforts to ensure that the Confidential Information and/or Intellectual Property will be treated confidentially.

10. **Discovery and Injunctive Relief.** In the event I violate, or Schwab reasonably believes I am about to violate, this Agreement, I agree Schwab is entitled to injunctive relief to prevent the violation(s) and/or preserve the status quo. I agree that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and Schwab shall have the right to conduct forensic examination(s) of Electronic Devices in my possession or control, if Schwab reasonably believes such devices contain Confidential Information and/or Intellectual Property. I further agree that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis. If any dispute under this Agreement is arbitrable, then I understand my agreement to engage in discovery as outlined in this paragraph is an essential term of my arbitration agreement with Schwab, and these provisions are intended to supplement and modify any applicable arbitration rules.

11. **Liquidated Damages.** If I solicit clients or employees in violation of Paragraph 3, and/or use or disclose Confidential Information relating to clients and/or their accounts in violation of Paragraph 1, I understand Schwab will suffer damages that may be difficult to quantify at the time of the violation, including, but not limited to: costs associated with investigating, monitoring, or remedying the misuse of Confidential Information; costs associated with maintaining, restoring or repairing Schwab's relationship with current and prospective clients; revenue lost from client assets diverted or transferred; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity. Therefore, if I violate Paragraph 3, and/or Paragraph 1 relating to clients and/or their accounts, I agree to pay Schwab the following liquidated damages: (a) four percent (4%) of any client assets diverted from Schwab for any client who was solicited and/or whose Confidential Information was used or disclosed; and/or, (b) seventy-five percent (75%) of the most recent full year's total annual compensation paid by Schwab to each employee solicited or induced to leave his or her employment. I agree that these formulas represent reasonable estimates of the compensatory damages that Schwab will incur as a result of violations of Paragraph 3 and/or Paragraph 1 relating to clients and/or their accounts, and are not a penalty. These liquidated damages are in addition to any other non-compensatory relief that Schwab may be entitled to, including but not limited to injunctive relief and/or punitive damages.

12. **General Provisions.** I agree that if Schwab or I bring an action to enforce any provision of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs to enforce such claim. If any provision of this Agreement is found to be invalid or unenforceable, I agree that such provision should be deemed modified to the extent necessary to make it enforceable. If a court or arbitration panel declines to amend the provision to make it enforceable, then the remaining provisions of this Agreement shall remain in full force and effect. The terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by Schwab, without giving effect to such state's conflict of law principles. I agree that this Agreement supplements any prior agreements I have with Schwab, all of which remain in full force and effect.

---

**EXHIBIT A**
List of family members and other relatives (identified by familial status) and individuals or entities to whom I provided financial services prior to joining Schwab:

**X** click here to electronically inital Exhibit A

**EXHIBIT B**
California Labor Code Section 2870

a.  Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

   1.  Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

   2.  Result from any work performed by the employee for the employer.

b.  To the extent that a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**X** click here to electronically inital Exhibit B

---

**EXHIBIT C**
Pre-Existing Intellectual Property Registrations:


**X** click here to electronically inital Exhibit C


**Signature**
I represent that I am the individual indicated in the "Work Contact Information" section in the upper left hand corner of this screen, that I accessed this screen by logging in to the Schwab network and using my unique password, and that I have not shared my password with anyone.

By clicking "I Agree" below I am creating a binding contract with Schwab, just as enforceable as if it were a handwritten signature.

I Agree

# FISHER & PHILLIPS LLP
### ATTORNEYS AT LAW
www.laborlawyers.com

**Philadelphia**
Radnor Financial Center
201 King of Prussia Road
Suite 650
Radnor, PA 19087
(610) 230-2150 Tel
(610) 230-2151 Fax

Writer's Direct Dial:
(610) 230-2133

Writer's E-mail:
sguerette@laborlawyers.com

June 12, 2008

**Via Telecopier**
Peter J. Aldrich, Esquire
100 Village Square Crossing, Suite 201
P.O. Box 32699
Palm Beach Gardens, FL 33420

**Via Telecopier**
David Brodie, Esquire
Weisman, Brodie, Starr & Margolies, P.A.
1301 N. Federal Highway
Lake Worth, FL 33460

> **Re:   Post Employment Obligations of Lance McMurry**

Dear Messrs. Aldrich and Brodie:

This firm has been retained to represent Charles Schwab & Co., Inc. ("Schwab") in all matters concerning Lance McMurry's post-employment obligations to Schwab. Mr. McMurry is a former Schwab employee who is now employed by Banc of America Investment Services, Inc. ("BOA") in its Naples office.

In connection with his employment at Schwab, Mr. McMurry executed a <u>Confidentiality, Nonsolicitation and Assignment Agreement</u> (the "Agreement"). Of course, this likely came as no surprise, since you and BOA are aware from past direct experience that Schwab registered representatives all sign such agreements.

Mr. McMurry's Agreement prohibits him from directly or indirectly soliciting or inducing Schwab's customers to transfer their business. Specifically, the Agreement provides:

> 3.   **Agreement Not to Solicit.** While I work for Schwab and for 18 months after my employment ends, I will not directly or indirectly solicit or induce: (a) any existing or prospective Schwab clients I serviced or about whom I gained Confidential Information (other than those listed in Exhibit A) in an attempt to divert, transfer, or otherwise take away business or prospective business from Schwab; and/or (b) any Schwab employee or contingent worker to leave his or her employment or engagement with Schwab.



EXHIBIT

"I"

June 12, 2008
Page 2

<u>Confidentiality, Nonsolicitation and Assignment Agreement</u>.

      Mr. McMurry's Agreement further precludes him from using or disclosing Schwab's confidential or proprietary information, including Schwab client names, addresses, phone numbers and email addresses.  Specifically, sections 1, 2 and 4 of the Agreement provide:

> 1.    …I agree not to use or disclose any Confidential Information and/or Intellectual Property during or after my employment with Schwab.

> **2.    What is Schwab Confidential Information and Intellectual Property?**  "Confidential Information" is all information learned during my employment that is not generally known to the public at the time it is made known to me.  It includes, but is not limited to:  "Trade Secrets" and "Developments," as defined below; names, addresses, phone numbers, email addresses, account numbers or financial information pertaining to Schwab clients or prospective clients; proprietary software designs and hardware configurations; proprietary technology; business methods or strategies; new product and service ideas; marketing, financial, research and sales data; information sufficient to identify clients, vendors, or personnel; client, vendor or personnel lists, contact, account and related information; and all information Schwab treats or is obligated to treat as confidential, privileged, or for internal use only, whether or not owned by Schwab.  "Trade Secrets" is any information that (i) has economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) Schwab takes reasonable steps to protect as secret.  "Intellectual Property" is Schwab's copyrighted materials, trademarks, service marks, logos, patents, Trade Secrets, and other intellectual property and proprietary rights.

*    *    *

> **4.    Removal and Return of Schwab Property.**  I will not remove any Schwab property, including any Confidential Information and/or Intellectual Property, in original or copied form, in either electronic or hardcopy form, except as required for me to carry out my job duties while employed by Schwab. Upon termination of my employment with Schwab for any reason, my

June 12, 2008
Page 3

> acceptance of other employment, or at Schwab's request, I will
> immediately return to Schwab all Schwab property and documents,
> including but not limited to Confidential Information and/or
> Intellectual Property; any Schwab-issued credit cards, security
> badges, keys and Secure ID tokens; and all Schwab-issued
> electronic and telephonic equipment including but not limited to
> computers, mobile phones, personal data assistants, CD-ROMs,
> DVDs, floppy disks, Zip drives, USB storage devices, flash drives,
> memory cards, or other electronic devices ("Electronic Devices").

Unfortunately, Schwab has reason to believe that Mr. McMurry has violated, and will continue to violate, the contractual obligations set forth above. Schwab has received reports from customers indicating that Mr. McMurry has been contacting them by telephone in an effort to induce them to transfer their business to BOA. This is a direct violation of his Agreement with Schwab.

In addition, although Mr. McMurry's resignation letter states that he is not in possession of any "Schwab records," his Agreement prohibits the use or disclosure of Schwab's confidential information, specifically including the "names, addresses, phone numbers, email addresses, account numbers or financial information pertaining to Schwab clients". Accordingly, whether or not Mr. McMurry has retained any actual records from Schwab, his use of Schwab's customer information to contact customers constitutes a misappropriation of its confidential and trade secret customer information and a breach of his Agreement.

Please be aware that the Schwab financial advisors who are now servicing clients formerly serviced by Mr. McMurry have been instructed to inform any client who asks that Mr. McMurry is now working for BOA in its Naples office. Therefore, there is no need for Mr. McMurry to contact Schwab's customers to let them know where he has moved.

Moreover, any action by BOA to accept wrongfully misappropriated customer information onto its premises, or to use or disclose the information to prepare mailings -- or otherwise aid, induce or permit Mr. McMurry to solicit Schwab customers to transfer their business to BOA -- would constitute not only a misappropriation of Schwab's trade secret customer information, but also tortious interference with Schwab's contractual relationships with its employees and/or former employees.

Accordingly, demand is hereby made that Mr. McMurry and BOA:

(1) immediately refrain from any further breaches of Mr. McMurry's Agreement;

(2) immediately identify in writing each entity and individual that has been contacted by Mr. McMurry or an employee of BOA on his behalf;

June 12, 2008
Page 4

    (3) immediately provide me, as Schwab's representative, with a copy of any mailings BOA has sent to Schwab's customers;

    (4) immediately commit in writing to refrain from further solicitation of Schwab customers previously serviced by Mr. McMurry as provided by his Agreement;

    (5) immediately return to me, as Schwab's representative, all information, documents and materials, whether in written or electronic form, regarding Schwab's customers and confirm in writing that all such information has been returned.

In short, Schwab takes its contractual and statutory rights seriously. We write to seek immediate assurance, as Mr. McMurry's counsel and current employer, that you will take steps to ensure that Mr. McMurry ceases his violations of his Agreement and complies with his post-employment obligations to Schwab. Your failure to immediately provide the requested assurances will leave Schwab no choice but to seek appropriate legal and equitable relief.

Very truly yours,

Susan M. Guerette
For FISHER & PHILLIPS LLP

SMG:jrl

CHARLES SCHWAB CONFIDENTIALITY, NONSOLICITATION, AND
INTELLECTUAL PROPERTY OWNERSHIP AGREEMENT 2008 (Simplified
Confidentiality Agreement - Rev. 3/08)
### CONFIRMATION PAGE

Confirmation of Agreement to and Signature on Confidentiality, Nonsolicitation and Assignment Agreement.

This is your Confirmation of your electronic agreement to the Confidentiality, Nonsolicitation and Assignment Agreement. You may print this copy and record of our agreement and retain it for your records.

To PRINT this page, simply click the PRINT BUTTON on your browser.

**Employee:** Lance Mcmurry
**Employee ID:** 07096
**Employee Logon:** us\lance.mcmurry
**Employee Email:** Lance.Mcmurry@schwab.com
**Employee Telephone:** +1(239)436-1552
**Employee Manager:** Joe Lacagnina

**Date of Electronic Signature:** 05/02/2008 21:30:53 PM EST


**I AM ENTERING INTO THIS AGREEMENT IN CONSIDERATION FOR** my
initial or continued at-will employment with Charles Schwab & Co., Inc., its parent
company and/or its subsidiaries, affiliates, joint venturers, and successors (collectively,
"Schwab"), and the compensation and other benefits I receive from Schwab, including
my participation in bonus and incentive compensation plans for which I am eligible.
Acknowledging the receipt and adequacy of this consideration, and intending to be
legally bound, I agree as follows:

    a. that I will maintain the confidentiality of all Confidential Information and
Intellectual Property, as defined below, that I develop or obtain while I work at
Schwab;

    b. that Schwab owns all Confidential Information and Intellectual Property, and that
I will not assert any claim to the Confidential Information and/or Intellectual
Property; and

    c. that I will not solicit or encourage Schwab's employees or Schwab's current or
prospective clients to leave Schwab.

The scope of these obligations, and some of the possible consequences for breaching
them, are described in more detail below.

    1. **Protection of Schwab's Confidential Information and Intellectual Property.**
While working at Schwab, I will develop and/or have access to Schwab's
Confidential Information and/or Intellectual Property, as defined in Paragraph 2. I

acknowledge that Confidential Information and Intellectual Property is the exclusive property of Schwab, its business partners, licensors, and/or clients, and I agree not to assert any claim to it. Except as permitted in Paragraph 7, I agree not to use or disclose any Confidential Information and/or Intellectual Property during or after my employment with Schwab.

2. **What is Schwab Confidential Information and Intellectual Property?**
"Confidential Information" is all information learned during my employment that is not generally known to the public at the time it is made known to me. It includes, but is not limited to: "Trade Secrets" and "Developments," as defined below; names, addresses, phone numbers, email addresses, account numbers or financial information pertaining to Schwab clients or prospective clients; proprietary software designs and hardware configurations; proprietary technology; business methods or strategies; new product and service ideas; marketing, financial, research and sales data; information sufficient to identify clients, vendors, or personnel; client, vendor or personnel lists, contact, account and related information; and all information Schwab treats or is obligated to treat as confidential, privileged, or for internal use only, whether or not owned by Schwab. "Trade Secrets" is any information that (i) has economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its use; and (ii) Schwab takes reasonable steps to protect as secret. "Intellectual Property" is Schwab's copyrighted materials, trademarks, service marks, logos, patents, Trade Secrets, and other intellectual property and proprietary rights.

3. **Agreement Not to Solicit.** While I work for Schwab and for 18 months after my employment ends, I will not directly or indirectly solicit or induce: (a) any existing or prospective Schwab clients I serviced or about whom I gained Confidential Information (other than those listed in Exhibit A) in an attempt to divert, transfer, or otherwise take away business or prospective business from Schwab; and/or (b) any Schwab employee or contingent worker to leave his or her employment or engagement with Schwab.

4. **Removal and Return of Schwab Property.** I will not remove any Schwab property, including any Confidential Information and/or Intellectual Property, in original or copied form, in either electronic or hardcopy form, except as required for me to carry out my job duties while employed by Schwab. Upon termination of my employment with Schwab for any reason, my acceptance of other employment, or at Schwab's request, I will immediately return to Schwab all Schwab property and documents, including but not limited to Confidential Information and/or Intellectual Property; any Schwab-issued credit cards, security badges, keys and Secure ID tokens; and all Schwab-issued electronic and telephonic equipment including but not limited to computers, mobile phones, personal data assistants, CD-ROMs, DVDs, floppy disks, Zip drives, USB storage devices, flash drives, memory cards, or other electronic devices ("Electronic Devices").

5. **Obligation to Protect Confidential Information and Intellectual Property.** I will promptly notify Schwab if I become aware of or suspect any unauthorized use or disclosure of Confidential Information and/or Intellectual Property by me or anyone else, whether intentional or accidental.

6. **Schwab's Ownership of Intellectual Property "Developments."**

    a. **Disclosure of Developments While Employed by Schwab.** I will promptly disclose in confidence to Schwab all inventions, improvements, designs, original works of authorship, and processes, including but not limited to all computer software programs and databases, whether or not protected or capable of protection under intellectual property or other laws, as well as all works based upon, derived from, reduced from, collecting, containing or making use of any of the foregoing or of any other Confidential Information or Intellectual Property of Schwab (collectively, "Developments") that I create, make, conceive, implement, or first reduce to practice, either alone or with others, while I am employed by Schwab, and: (a) result from any work I perform for Schwab, whether or not in the normal course of my employment or during normal business hours; (b) reasonably relate to the actual or anticipated business, research or development of Schwab; or (c) are developed with the use of Schwab resources, facilities, Confidential Information and/or Intellectual Property.

    b. **Help in Confirming Ownership.** I must promptly disclose Developments to Schwab whether or not the Developments are patentable, copyrightable, or protectable as Trade Secrets. I agree all Developments will be the exclusive property of Schwab, and I irrevocably assign to Schwab all rights, title, and interest I may have or acquire in and to the Developments and the right to secure registrations, renewals, reissues, and extensions in the Developments. I will sign any documents and do all things necessary, whether during my employment or after, to assist Schwab to register, perfect, maintain and enforce Schwab's rights in any Developments, without any additional compensation. If I fail or refuse for any reason to sign any document Schwab requires to perfect its ownership of the Developments, I appoint Schwab as my attorney-in-fact (this appointment to be irrevocable and to be a power coupled with an interest) to act on my behalf and to execute all such documents.

    c. **State Laws Relating to Ownership of Developments.** I understand if I am or become a California resident while employed by Schwab, then this Paragraph 6 will not apply to any Developments which fully qualify under Section 2870 of the California Labor Code, attached as Exhibit B to this Agreement. To the extent other similar laws may apply to residents of other states, the terms of Paragraph 6 shall be limited solely to the extent provided by the applicable laws of such states.

    d. **Pre-Existing Intellectual Property.** To the extent I have any pre-existing patent, trademark, or copyright registrations, I have listed them in Exhibit C. I understand Schwab does not want to use any other person's intellectual property unlawfully. I agree to indemnify and hold Schwab harmless against any liability, and pay any loss or expense Schwab incurs, arising out of any claim that I misappropriated or infringed proprietary rights of a former employer or any other third party.

7. **Permissible Disclosure of Confidential Information and/or Intellectual Property.** I can only use or disclose Confidential Information and/or Intellectual Property to the extent: (a) necessary to perform my job duties at Schwab; (b) I receive advance written permission from an authorized senior or executive officer of Schwab; (c) I am legally compelled by subpoena or other legal process to disclose the Confidential Information and/or Intellectual Property, subject to the procedures in Paragraph 9; or (d) disclosure is sought by a government entity, regulatory agency, or self regulatory organization, subject to the procedures in Paragraph 9. I understand that Schwab's policy prohibits departing employees from taking client lists and account information.

8. **Questions About Confidential Information and/or Intellectual Property.** If I am unsure whether information is Confidential Information and/or Intellectual Property, I will treat it as Confidential Information and/or Intellectual Property unless I receive advance written permission from an authorized senior or executive officer of Schwab.

9. **Subpoenas and Other Legal Requests for Disclosure.** I will give Schwab prompt notice in writing before disclosing any Confidential Information and/or Intellectual Property under Paragraph 7 subsections (c) and (d). If Schwab does not obtain an order preventing the disclosure, I agree to disclose only that Confidential Information and/or Intellectual Property that I am legally compelled to disclose and to exercise reasonable efforts to ensure that the Confidential Information and/or Intellectual Property will be treated confidentially.

10. **Discovery and Injunctive Relief.** In the event I violate, or Schwab reasonably believes I am about to violate, this Agreement, I agree Schwab is entitled to injunctive relief to prevent the violation(s) and/or preserve the status quo. I agree that in any proceeding alleging breach of this Agreement, each party shall have the right to engage in deposition and document discovery, and Schwab shall have the right to conduct forensic examination(s) of Electronic Devices in my possession or control, if Schwab reasonably believes such devices contain Confidential Information and/or Intellectual Property. I further agree that in connection with any application for injunctive relief, discovery shall be conducted on an expedited basis. If any dispute under this Agreement is arbitrable, then I understand my agreement to engage in discovery as outlined in this paragraph is an essential term of my arbitration agreement with Schwab, and these provisions are intended to supplement and modify any applicable arbitration rules.

11. **Liquidated Damages.** If I solicit clients or employees in violation of Paragraph 3, and/or use or disclose Confidential Information relating to clients and/or their accounts in violation of Paragraph 1, I understand Schwab will suffer damages that may be difficult to quantify at the time of the violation, including, but not limited to: costs associated with investigating, monitoring, or remedying the misuse of Confidential Information; costs associated with maintaining, restoring or repairing Schwab's relationship with current and prospective clients; revenue lost from client assets diverted or transferred; costs associated with replacing employees, including recruiting, hiring and training replacement employees, and lost productivity. Therefore, if I violate Paragraph 3, and/or Paragraph 1 relating to clients and/or their accounts, I agree to pay Schwab the following liquidated damages: (a) four percent (4%) of any client assets diverted from Schwab for any client who was solicited and/or whose Confidential Information was used or disclosed; and/or, (b) seventy-five percent (75%) of the most recent full year's total annual compensation paid by Schwab to each employee solicited or induced to leave his or her employment. I agree that these formulas represent reasonable estimates of the compensatory damages that Schwab will incur as a result of violations of Paragraph 3 and/or Paragraph 1 relating to clients and/or their accounts, and are not a penalty. These liquidated damages are in addition to any other non-compensatory relief that Schwab may be entitled to, including but not limited to injunctive relief and/or punitive damages.

12. **General Provisions.** I agree that if Schwab or I bring an action to enforce any provision of this Agreement, the prevailing party shall be entitled to attorneys' fees and costs to enforce such claim. If any provision of this Agreement is found to be invalid or unenforceable, I agree that such provision should be deemed modified to the extent necessary to make it enforceable. If a court or arbitration panel declines to amend the provision to make it enforceable, then the remaining provisions of this Agreement shall remain in full force and effect. The terms of this Agreement and any disputes arising out of it shall be governed by, and construed in accordance with, the laws of the state in which I was last employed by Schwab, without giving effect to such state's conflict of law principles. I agree that this Agreement supplements any prior agreements I have with Schwab, all of which remain in full force and effect.

---

**EXHIBIT A**
List of family members and other relatives (identified by familial status) and individuals or entities to whom I provided financial services prior to joining Schwab:

**X** click here to electronically inital Exhibit A

**EXHIBIT B**
California Labor Code Section 2870

a. Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    1. Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

    2. Result from any work performed by the employee for the employer.

b. To the extent that a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**X** click here to electronically inital Exhibit B

---

**EXHIBIT C**
Pre-Existing Intellectual Property Registrations:

**X** click here to electronically inital Exhibit C

**Signature**
I represent that I am the individual indicated in the "Work Contact Information" section in the upper left hand corner of this screen, that I accessed this screen by logging in to the Schwab network and using my unique password, and that I have not shared my password with anyone.

By clicking "I Agree" below I am creating a binding contract with Schwab, just as enforceable as if it were a handwritten signature.

I Agree

THE CHARLES SCHWAB CORPORATION

# Code of Business Conduct and Ethics

*Our Vision*

Provide clients with the most useful and ethical financial services in the world.

*Our Values*

Be fair, empathetic and responsive in serving our clients.

Respect and reinforce our fellow employees and the power of teamwork.

Strive relentlessly to innovate what we do and how we do it.

Always earn and be worthy of our clients' trust.

*Shareholder Value*

The company's directors and employees shall endeavor to act in the best interests of the company and its stockholders.

*charles* SCHWAB

EXHIBIT

"F"